UNITED STATES, Appellee,

v.

Staff Sergeant Eddie N. VELEZ,
401–96–5986, United States
Army, Appellant.

SPCM 21708.

U.S. Army Court of Military Review.

21 May 1986.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Major Edwin D. Selby, JAGC, Captain Scott A. Hancock, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Byron J. Braun, JAGC (on brief).

Before MARDEN, PAULEY, and De GIULIO, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Judge:

Contrary to his pleas, appellant was found guilty by a special court-martial composed of officer members of attempted sale of military property and wrongful appropriation of military property in violation of Articles 80 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 921, respectively. He was sentenced to a bad-conduct discharge, confinement for three months and reduction to Private E–1. The convening authority approved the sentence.

It is alleged that "the military judge erred to the substantial prejudice of the appellant by admitting evidence showing that the appellant exercised his Fifth Amendment rights." We disagree and affirm the findings of guilty and the sentence.

Appellant was a tactical wire team chief for his unit. On 11 March 1985, appellant, dressed in civilian clothes, entered the Pack

Rat Army Surplus Store and asked the store owner if he was interested in buying a PRC–77 radio, a type of tactical military radio. The owner, a retired Army officer and an ex-deputy provost marshal at Fort Campbell, Kentucky, informed the appellant that he would have to see the radio. Appellant indicated he would bring the radio to the store later that day. The store owner called the local office of the Army Criminal Investigation Command (CID) and advised them that he suspected appellant was trying to sell government property. Subsequently, CID agents went to the store to question appellant, but appellant did not return that day. On 12 March 1985, appellant's unit was tasked on short notice to operate a firing range. Two PRC–77 radios were required to operate the range. Two radios, for which individuals other than appellant were responsible, were obtained by appellant. A third PRC radio was also obtained by appellant. Although his counsel attempted to show that appellant had signed for this radio, the record is ambiguous as to that fact. Because of the short notice, it was not practical to obtain military vehicles and appellant transported the radios to the range in his own automobile. Upon completion of firing just before lunch time, appellant was instructed by his superior officer to return the radios to the "commo shop." Rather than returning the radios to the "commo shop," appellant drove to the Pack Rat Surplus Store. He was in battle dress uniform with insignia of rank displayed. He eventually took one of the PRC–77s into the store for the owner to see and evaluate. He "set up" the radio and indicated he would take $300.00 for it. In the meantime, the owner of the shop again notified the CID, and appellant was apprehended in the store. He volunteered to the apprehending agent that he had two more radios in the trunk of his car. He consented to a search of the car and the radios were found. Appellant was taken to the CID office where, after being properly advised of his rights, he started to give a statement. Before the statement was complet-

ed, appellant elected to discontinue the interview.

During trial the following colloquy occurred between trial counsel and the CID agent:

Q. Was this conversation, this interview reduced to writing?

A. We started to type up a statement. However, half way through the statement, Staff Sergeant Velez [appellant] elected not to continue.

\* \* \* \* \* \*

Q. This statement form comes to a stop halfway down the page. Can you explain why that happened?

A. Staff Sergeant Velez [appellant] was giving me the chronological order of what happened at the Pack Rat store. He stopped and then I asked him—I was going to ask him a question of how much money did he ask for for [sic] the PRC–77, at which time he discontinued the interview at the point.

\* \* \* \* \* \*

Q. Okay. Now, when you got to the last line here, after setting up the radio, the owner asked me, and then it stops.

A. That's correct.

Q. What was your question at that point?

A. The question I was gonna ask was, 'The owner asked me how much I wanted,' talking—talking Staff Sergeant Velez [appellant]; at which time he just discontinued the interview.

Q. Discontinued the interview. Thank you very much.

There was no objection by defense counsel and the court was not instructed to disregard these comments. Subsequently, defense counsel cross-examined the witness concerning appellant's assertion of his right to remain silent, elicited testimony from the appellant concerning appellant's discontinuing the interview and used the fact of appellant's assertion of his rights in argument. Appellant maintained that he was trying to run his own investigation to catch people selling government radios and people buying them, that he never intended

to wrongfully appropriate or sell military property, that he was apprehended by the CID before he could complete his investigation, and that he cooperated with the CID and consented to the search of his car because he was not involved in criminal misconduct. He continued to cooperate with the CID by starting to give a statement but discontinued his cooperation and statement when the agents indicated they did not believe him and because he believed they were placing something untrue in the statement.

■ Military Rule of Evidence 301(f)(3) sets forth the effect of pretrial claiming of the privilege concerning compulsory self-incrimination. It provides:

> The fact that the accused during official questioning and in the exercise of rights under the Fifth Amendment to the Constitution of the United States or Article 31, remained silent, refused to answer a certain question, requested counsel, or requested that the questioning be terminated is inadmissible against the accused.

This rule is based upon *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (Prosecutor impeached accused on cross-examination by eliciting that he remained silent after arrest and *Miranda*[1] rights). The rule was expanded to include a request to terminate questioning. Appendix 22, Mil.R.Evid. 301(f)(3), MCM, 1984. It has long been the rule in military practice that it is improper to bring to the attention of the trier of fact evidence that the accused asserted his right to remain silent. *United States v. Nees*, 39 CMR 29, 33–34 (C.M.A.1968). This principle is founded upon the realization that invocation of constitutional or statutory rights to silence and counsel equates to a conclusion that a truly innocent accused has nothing

to hide by asserting these privileges. *United States v. Moore*, 1 M.J. 390, 391 (C.M.A.1976). In *United States v. Ross*, 7 M.J. 174 (C.M.A.1979), the prohibition was applied when the information concerning the accused claiming of his rights was elicited from third parties rather than the accused. In the case before us, as in *Ross*, the information was elicited from a CID agent, a third party. Applying these rules to the present case, we find error in the trial counsel's eliciting from a CID agent, before the trier of fact, that the appellant exercised a right to remain silent and discontinued the interview.

■ Having determined that the admission of such evidence was error, we must determine the effect of that error. The standard to be applied is whether the error was harmless beyond a reasonable doubt. *United States v. Ross*, 7 M.J. 174, 176; *United States v. Moore*, 1 M.J. 390; *see also United States v. Remai*, 19 M.J. 229 (C.M.A.1985).

In some respects, the case before us is similar to *United States v. Frentz*, 21 M.J. 813 (N.M.C.M.R.1985), where the accused used invocation of his rights as a defense to establish credibility.[2] In the *Frentz* case, the trial defense counsel specifically addressed invocation of rights in an opening statement and during cross-examination of government witnesses. The defense made "... a calculated gamble ... conceived as part of the appellant's theory of the case from the outset and fully litigated before the triers of fact...." *United States v. Frentz*, 21 M.J. at 818. Accordingly, the Court held the error to be harmless beyond a reasonable doubt.

■ Although there are factual differences in the case before us and *Frentz*, principally the fact that appellant's invocation of rights was first raised by trial counsel, we are persuaded that the *Frentz* rationale should be extended to cases where an

---

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Concerning a similar defense, the Seventh Circuit has held that cross-examination of an accused concerning his post-arrest silence is per-

missible where the defense alleges or creates an impression of full cooperation with police. *United States v. Shue*, 766 F.2d 1122, 1129–30 (7th Cir.1984).

appellant uses that testimony as a calculated strategy. Appellant's lack of objection, his failure to ask for a cautionary instruction, and his subsequent affirmative use of his invocation of rights as part of his case convinces us that such testimony was part of a presentation of the defense. Under the circumstances, any error was harmless. A careful examination of the record leads us to the conclusion that there is no reasonable possibility that the error might have contributed to the conviction. We find that the evidence against appellant is so overwhelming and his defense so incredible that the error in admitting testimony concerning his invocation of rights is harmless beyond a reasonable doubt.

The other assignments of error raised personally by appellant are without merit. The findings of guilty and the sentence are affirmed.

Senior Judge MARDEN and Judge PAULEY concur.