**UNITED STATES, Appellee,**

v.

**Private First Class William J. PALUM-BO, 306–86–8827 United States Army, Appellant.**

**ACMR 8702725.**

U.S. Army Court of Military Review.

27 Oct. 1988.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC, Captain Scott A. Hancock, JAGC, (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Daniel J. Dell'Orto, JAGC, Captain George R. Gillette, JAGC (on brief).

Before ADAMKEWICZ, MYERS and SMITH Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

Pursuant to mixed pleas, appellant was convicted of larceny (two specifications), absence without leave, false swearing, and disrespect to a noncommissioned officer [1] in violation of Articles 121, 86, 134, and 91, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 886, 934, and 891, respectively.

Appellant began out processing on 22 May 1987 based on orders issued on 18 May 1987 which assigned appellant to the U.S. Army Transition Point, Fort Hood, Texas, for separation under an early release program. *See* Army Regulation 635–200, Personnel Separations: Enlisted Personnel, para. 16–8 (20 July 1984). On the day before appellant's expected release date, Specialist Four (SP4) Ricky Brooks, the Expiration of Term of Service (ETS) Supervisor, Central Clearance, Fort Hood, informed appellant that he was not eligible for early release from the Army and that he was to return to his Personnel Administration Center (PAC). The discharge certificate (DD Form 214), which had been prepared in advance of appellant's expected release date from active duty and signed by a military official, was not physically delivered to appellant. Appellant alleges that the DD Form 214 was shown to him and that he requested that it be forwarded to his home address. Appellant subsequently collected his pay and departed Fort Hood. On 26 May 1987, orders were issued changing appellant's release from active duty from 22 May to 25 July 1987.

In his first assignment of error, appellant argues that *in personam* jurisdiction terminated when his discharge certificate was ready for delivery and he had received final pay. We disagree.

"Military status for purposes of court-martial jurisdiction generally ends on the delivery of a valid discharge certificate."

Dep't of Army, Pam. 27–174, Legal Services: Jurisdiction, para. 4–5*b* (25 Sept. 1986). " 'Delivery' ... has significant legal meaning." *United States v. Howard*, 20 M.J. 353, 354 (C.M.A.1985). Delivery of the discharge certificate shows that the transaction or relationship is complete. A "[d]ischarge is effective upon delivery of the discharge certificate." *Id.* *See also United States v. Scott*, 29 C.M.R. 462, 463 (C.M.A. 1960); Manual for Courts–Martial, United States, 1984 [hereinafter M.C.M., 1984], Rule for Courts–Martial 202(a) discussion.

In support of his argument, appellant places great emphasis on 10 U.S.C. § 1168(a), which provides that "[a] member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are *ready for delivery* to him" (emphasis added). Congress, however, did not indicate that the language in this code provision was intended to change the long-standing historical precedent that a discharge is effective upon "delivery" of the discharge certificate. *United States v. Howard*, 20 M.J. at 354. Even the plain statutory language, "may not be discharged," does not set out or establish the moment the discharge is effective. "Mere preparation of the instrument of discharge, without delivery thereof, does not terminate military status." *United States v. Noble*, 32 C.M.R. 413, 416 (C.M.A.1962). Furthermore, "delivery" does not take place unless delivery of the instrument is accompanied "with the intention that it take effect according to its terms." *Id.* In the instant case, as part of the discharge process, the DD Form 214 was prepared and signed days before appellant arrived at SP4 Brooks' station at the Separation Transfer Point. Although the certificate was "ready" for delivery to appellant, there was no delivery in this case and no discharge.

Even if appellant was shown the discharge certificate as he alleges, there

---

**1.** Appellant pled guilty to the offense of disrespect to a noncommissioned officer and not guilty to all other specifications and charges.

was no intent that the discharge take effect on the date indicated on the certificate. *See United States v. Griffin*, 32 C.M.R. 213, 216 (C.M.A.1962). Specialist Brooks personally informed appellant that he was not eligible at that time for discharge and showed him a copy of the Department of the Army message which stated that soldiers holding the same Military Occupational Speciality as appellant were not authorized an early release from the Army. Appellant ignored SP4 Brooks' instructions and continued to proceed with out processing as though he was discharged by collecting his pay and returning to his home. However, collection of final pay, without delivery of the discharge certificate or other valid notice of status termination did not sever *in personam* jurisdiction over appellant. *See United States v. Howard*, 20 M.J. at 354.

Appellant also alleges that the military judge erred by failing to grant appellant's motion for a mistrial. On two separate occasions during the trial, statements made by appellant were presented into evidence. These statements had not been disclosed to the defense counsel prior to trial. *See* M.C.M., 1984, Mil.R.Evid. 304(d)(1) [hereinafter Mil.R.Evid.]. In addition, a special agent of the Criminal Investigation Command (CID) revealed to the court that during a second interview, appellant invoked his rights and declined to be interviewed. The defense counsel objected to the evidence and requested on each occasion that the military judge grant a mistrial. Each time, the military judge overruled the defense request for a mistrial and promptly instructed the court to disregard the question and response.

■ Mil.R.Evid. 304(d)(1) requires the prosecution to disclose to the defense all statements made by the accused that are relevant to the case. If the prosecution fails to disclose these statements to the defense prior to arraignment, "the military judge may make such orders as are required in the interests of justice." Mil.R. Evid. 304(d)(2)(B). Here, the military judge's ruling in effect excluded the statements made by appellant which had not been previously disclosed to the defense by instructing the court members to disregard the testimony relating to those statements. The circumstances in this case demonstrate that the court members were able to disregard these statements as they found appellant not guilty of one of the larceny offenses which was supported by one of the statements. The statements made by appellant amounted to admissions of possession of the property and intent to take the property. The military judge's actions in suppressing the statements were in "the interests of justice." Mil.R.Evid. 304(d)(2)(B). *See United States v. Callara*, 21 M.J. 259, 262–263 (C.M.A.1986). The military judge, who fashioned a fair solution to the nondisclosure by the government, did not abuse his discretion in denying the defense motion for a mistrial on the basis that the statements were not previously disclosed to the defense.

■ The testimony that appellant declined to give a statement to the criminal investigator gives us the most concern. "[I]t is improper to bring to the attention of the members that the accused has exercised his right to remain silent prior to trial." *United States v. Fitzpatrick*, 14 M.J. 394, 398 (C.M.A.1983) (citations omitted). *See also United States v. Velez*, 22 M.J. 637, 639 (A.C.M.R.1986), *petition denied*, 24 M.J. 45 (C.M.A.1987); Mil.R.Evid. 301(f)(3). Therefore, it was error for the criminal investigator to inform the court members that appellant invoked his right to remain silent when questioned about the larcenies.

■ Having determined that there was an error, we must now determine whether the error "is so outrageous as to require that the proceedings be terminated or whether, on the other hand, an instruction by the military judge can cure the error." *United States v. Garrett*, 24 M.J. 413, 418 (C.M.A.1987). *See also United States v. Velez*, 22 M.J. at 639 (When evidence is erroneously admitted, "[t]he standard to be applied is whether the error was harmless beyond a reasonable doubt."). Here, upon introduction of the inadmissible evidence, the military judge immediately instructed

the court members to disregard the evidence. The military judge explained to the members that the evidence should not be considered for any purpose and that appellant had a right to invoke his right to "request for an attorney's assistance." The military judge reinforced his instructions by telling the members that invoking the right to counsel when questioned about an offense is a right that "protects and may be invoked by those completely innocent of an offense." The military judge then obtained affirmative responses when he queried the members on whether they understood the instruction and whether they could follow it.

The military judge found that introduction of the evidence was inadvertent on the part of the trial counsel and ordered the purgative instructions composed with input from the defense counsel. The military judge, however, did not reiterate the instructions during his final instructions to the members, nor was he requested to do so by defense counsel. Subsequent to findings but prior to the sentencing phase of the trial, the military judge reconsidered his decision to deny the defense counsel's motion for a mistrial. He found that there was no "major harm or error" in this case and that the court members had demonstrated their ability to follow instructions when they had found appellant not guilty of one of the specifications.

■ Court members are presumed to follow their instructions unless there is clear and convincing evidence to the contrary. *United States v. Garrett*, 24 M.J. at 418. In light of the fact the court members were able to abide by the instructions regarding other evidence in the case to the extent of finding appellant not guilty of the pertinent specification, we are convinced that the court members in this case were able to follow the judge's instructions relating to appellant's invocation of his right to counsel.

Appellant is "entitled to a fair trial, not 'an error-free, perfect trial'". *United States v. Owens*, 21 M.J. 117, 126 (C.M.A. 1985) (quoting *United States v. Hasting*, 461 U.S. 499, 508, 103 S.Ct. 1974, 1980, 76

L.Ed.2d 96 (1983)). A careful examination of the record leads us to conclude that there is no reasonable possibility that the error might have contributed to the conviction on the remaining specifications and charges. The evidence against appellant is so overwhelming, that any error in admission of the evidence is harmless beyond a reasonable doubt. Therefore, we hold that the military judge's instructions were curative and that there did not exist any extraordinary circumstances which required terminating the trial. *See United States v. Garrett*, 24 M.J. at 418.

On consideration of the entire record, including consideration of the issue personally specified by the appellant, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, those findings of guilty and the sentence are affirmed.