**UNITED STATES**

**v.**

**Staff Sergeant James D. MARSHALL, FR 293–40–4234, United States Air Force.**

**ACM 27820.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 10 Feb. 1989.

Decided 28 Aug. 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Captain Mark R. Land and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Terry M. Petrie; Major Paul H. Blackwell, Jr. and Captain James C. Sinwell.

Before BLOMMERS, KASTL, MURDOCK and MILLS, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

This appeal centers on a rule of evidence—co-conspirator statements under Mil.R.Evid. 801(d)(2)(E). As the military judge explained at trial, the evidentiary contest grew out of "a classical case of admission of a statement of a co-conspirator in furtherance of a conspiracy and while a conspiracy is still ongoing."

We find no error on the particular facts before us and affirm.

*Statements of Co–Conspirators*

A

The appellant, Staff Sergeant Marshall, was convicted in Panama of various drug-related offenses in violation of Articles 81 and 112a, UCMJ, 10 U.S.C. §§ 881, 912a. His sentence is a dishonorable discharge, confinement for 12 years, total forfeitures, and reduction to airman basic. His of-

fenses were wrongful use, possession with intent to distribute, and importation of cocaine; and conspiracy to wrongfully import cocaine into the United States. It was this latter crime which led to the evidentiary clash before us today.

Sergeant Marshall made a motion at trial to suppress the out-of-court statements made by Airman Basic Dillard, one of the alleged co-conspirators. Dillard, a supposed kingpin in the scheme, was a prisoner in a nearby Army correction facility. There was no showing that he was unwilling to testify or that the Government had sought to immunize him. Instead of calling Dillard, the prosecution relied on the third alleged conspirator, Airman Basic Wentz. Wentz testified under grant of immunity as to everything that happened during the drug conspiracy, including statements made by Dillard. The defense objected to Wentz's testimony on two principal grounds: (a) the Government's evidence was too weak to invoke the "co-conspirator rule" of Mil.R.Evid. 801(d)(2)(E); and (b) Sergeant Marshall's Sixth Amendment confrontation rights were violated since the Government was able to smuggle the statements of Dillard into the trial even though he was not shown to be unavailable.

Prior to ruling on the motion, the military judge considered the testimony of five witnesses, together with twelve exhibits (leave records, airplane tickets, and the like), which tended to show a conspiracy and its details. The judge denied the defense motion. Essentially, he made the following findings: (1) A clear-cut, ongoing drug conspiracy was in operation and the accused was part of it when the statements in question were made; (2) Wentz's proffered testimony as to Dillard's participation and conduct was not strictly hearsay anyway—rather, it was directly admissible under Rule 801(d)(2)(E); (3) No impermissible "bootstrapping"[1] occurred—there was evidence independent of the statements uttered by Dillard; and (4) Especially when meshing Wentz's testimony with that of the other four witnesses and the various prosecution exhibits, the proffered evidence

was admissible under Mil.R.Evid. 801(d)(2)(E).

## B

▇ Under the circumstances, we hold that the military judge's ruling was correct.

The use of co-conspirator statements under the Rules of Evidence may have expanded dramatically in courts-martial as a result of the United States Supreme Court decision in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). The appellant makes a vigorous attack on the trial court's refusal to suppress the statements of Dillard as a co-conspirator, mainly on the basis of the unreliable evidence thereby reaching the triers of fact through a pernicious "back door" mechanism. The star Government witness, complains the appellant, never had to confront him in court. Various older authorities are marshaled in support of his argument. The Government response to his contention is that *Bourjaily* appears to have resolved the question to the contrary.

In his article *The Use of Co–Conspirator Statements Under the Rules of Evidence: A Revolutionary Change in Admissibility*, 124 Mil.L.Rev. 163, 164 (Spring 1989), Major Frederick L. Borch III suggests that:

The United States Supreme Court decisions of *United States v. Inadi*, [475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)] and *Bourjaily v. United States*, [483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)] dramatically alter Rule of Evidence 801(d)(2)(E), which governs the admissibility of co-conspirator hearsay. First, *Bourjaily* abolishes an old common law rule that had been considered to be a part of Rule 801(d)(2)(E). This rule provided that statements of co-conspirators were admissible only if evidence independent of them proved the existence of the conspiracy and the accused's membership in it. Second, *Inadi* and *Bourjaily* in concert end the need for co-conspirator hearsay proffered under Rule

---

**1.** Permitting the questioned evidence itself to furnish the predicate for its own admission.

801(d)(2)(E) to be analyzed in terms of the sixth amendment's right to confrontation.

The author continues:

The Supreme Court's abolition of these two significant requirements—both of which had acted as barriers to the admissibility of out-of-court statements of non-testifying co-conspirators—is nothing short of revolutionary. *Inadi* and *Bourjaily* have so altered the traditional requirements for admissibility under Rule 801(d)(2)(E) as to now permit nearly all statements which satisfy the literal language of Rule 801(d)(2)(E) to be received into evidence.

*Id.* at 163–164.[2]

Busy military practitioners working with this complicated area would do well to review the abovementioned Supreme Court guidance, together with the excellent analysis by Major Borch. Other informative material appears at Saltzburg, Schinasi & Schleuter, *Military Rules of Evidence Manual* 617–619 (2nd ed. 1986) and Saltzburg & Redden, *Federal Rules of Evidence Manual* 779–803 (4th ed. 1986). *See also United States v. Silverman*, 861 F.2d 571 (9th Cir.1988) and the cases gathered at Annot., 44 A.L.R.Fed. 627 (1979). A leading military case is *United States v. Arnold*, 25 M.J. 129, 133 (C.M.A.1987) in which the Court expresses a preference for the appearance of witnesses but finds a showing of unavailability "not required."[3] *See also United States v. Hubbard*, 28 M.J. 27, 33 (C.M.A.1989) and *United States v. Quick*, 22 M.J. 722, 725–726 (A.C.M.R. 1986).

The *Bourjaily/Inadi* approach was severely criticized by Major Borch in his recent article. He sees a real possibility of individuals being convicted for guilt by association rather than because of a criminal agreement. He fears that the new approach will elude the strictness required by the confrontation clause; admit unreliable statements; and generally do away with historic barriers which allowed only solid, trustworthy evidence to come before voting members. *See* Borch, *supra* at 186–194.

## C

In this case, it must be emphasized that *this Court does not rely solely on the statements of Dillard as co-conspirator.* To the contrary, we agree with the seasoned trial judge, who noted in specific findings that there was ample evidence of guilt independent of the proffered statements of the missing Dillard. *See generally* Umber, "Admitting Co–Conspirator Declarations," Army Lawyer, December 1989 at 18, 19. It follows that this case does not squarely raise many of the concerns stated in able oral argument before us that the legal baby has been tossed out with the bathwater. Here there was a plethora of other evidence, to include witnesses and documentary data, showing a conspiracy was underway. Moreover, those concerned about *Bourjaily/Inadi* might do well to remember that a military accused is not without power to call the absent witness himself; Mil.R.Evid. 806 permits an accused to attack the credibility of the declarant. Thus, in the present case, the appellant could have called the missing Dillard to the stand.

---

**2.** It is possible that *Inadi* and *Bourjaily* are fact-specific holdings which do not govern today's case. Both Supreme Court precedents involve tape-recorded conversations between various conspirators while the conspiracy was in existence; that is a different kettle of fish from what we have here, when the "snitch" and the appellant are allegedly in league with a non-testifying co-conspirator *who is available to the Government but never comes to the stand.* Several Federal precedents suggest that *Bourjaily* and *Inadi* are not so limited. *See, e.g., United States v. Peveto*, 881 F.2d 844, 851–852 (10th Cir.1989) (drug conspiracy); *United States v. Unruh*, 855 F.2d 1363, 1375 (9th Cir.1987) (bank kiting scheme); *see also United States v. Rahme*, 813

F.2d 31, 36 (2d Cir.1987) (three co-conspirators in drug scheme). *See* Mil.R.Evid. 101(b).

**3.** *United States v. Arnold*, 25 M.J. 129 (C.M.A. 1989) is a case where the Court of Military Appeals has extended the rationale of *Inadi* to another hearsay exception, statements admitted under the excited utterance exception, Mil.R. Evid. 803(2). Judge Cox held that unavailability need not be established despite a confrontation challenge. Judge Sullivan concurred in the result. Chief Judge Everett dissented and found error of constitutional dimensions in denying the appellant's right of confrontation.

## Motion for Mistrial

Following the appellant's trial in February 1989, trial defense counsel moved for a mistrial because of the failure of the Government to provide him a copy of a statement made by Airman Wentz. Defense counsel did not discover the existence of this statement until after trial. To the defense, the statement in question contained valuable ammunition for impeaching Wentz. A post-trial session was held in April 1989. *See* R.C.M. 1102(b) and *United States v. Scaff,* 29 M.J. 60, 65–66 (C.M.A. 1989).

After hearing evidence, the military judge reviewed the record of trial overnight. He then denied the motion, finding neither bad faith nor negligence on the part of the prosecution in failing to disclose the statement prior to trial. He further found that failure to disclose the statement did not materially impede the defense in either its preparation or its cross-examination of Wentz—particularly because of the abundance of other damaging information contained in numerous other statements properly made available for defense use.

We have carefully considered the testimony adduced during this post-trial session and the specific findings of fact made by the military judge. Like the judge, we are satisfied that although the statement was not disclosed to the defense, there was no *intentional* secreting of evidence. We also note the military judge's finding that neither the prosecution nor the defense had ever seen the statement prior to trial. Finally, we concur with the judge's assessment that the statement itself contains much data which is redundant as to Wentz's credibility and that "a veritable plethora of other information" had been provided to the defense in this case—including admissions that Wentz had smoked approximately $20.00 worth of cocaine every three or four days, used cocaine on two prior temporary duty assignments in the area, and smuggled cocaine back to his home base. Accordingly, we are convinced that the defense had ample information *aliunde* the statement in question to challenge Wentz as a repeated drug user who was testifying under grant of immunity.

A mistrial is a drastic remedy, and it should be employed only when manifestly necessary to preserve the ends of justice. R.C.M. 915(a); *United States v. Pastor,* 8 M.J. 280, 281 (C.M.A.1980). Such motion is addressed to the sound discretion of the military judge. The ruling will not be disturbed on appeal unless there has been an abuse of discretion. *United States v. Rosser,* 6 M.J. 267 (C.M.A.1979); *United States v. Anderson,* 21 M.J. 751, 756 (N.M. C.M.R.1985). Here, we find the prosecution's innocent failure to disclose all statements made by the witness did not mandate granting a mistrial. *See generally United States v. Palumbo,* 27 M.J. 565, 567 (A.C.M.R.1988). As the Government appellate brief aptly puts it, the discovery of one more "clod of dirt," nonexculpatory in nature and inadvertently withheld, does not merit a mistrial.

## Motion to Submit Document

We earlier granted appellate defense counsel's motion to submit a letter from the appellant. Nothing in that letter convinces us that his conviction should be set aside or that his sentence is inappropriate. *See United States v. Lee,* 22 M.J. 767, 768 (A.F.C.M.R.1986), *pet. denied* 23 M.J. 406 (1987) (extensive gathering of citations).

The findings of guilty and the sentence are correct in law and fact and, upon the basis of the entire record, are

AFFIRMED.

Senior Judge BLOMMERS (concurring):

I am comfortable with the result we reach for two reasons. First, in this case there is abundant evidence, independent of the statements attributed to Dillard by Wentz, to establish the existence of a conspiracy and the appellant's involvement therein. And second, the defense at trial made no request to have Dillard produced as a witness once the trial judge ruled that out-of-court statements made by him could be introduced through the testimony of

Wentz.[1]  *See* R.C.M. 701(e), 703(b)(1), 905(b)(4), and 906(b)(7). As Senior Judge Kastl pointed out, the credibility of Wentz's testimony could be attacked through testimony by Dillard himself. Mil.R.Evid. 806.

The prosecution offered no evidence that Dillard was not available as a witness in this case. To permit Wentz to give live testimony about what one of his *former* co-conspirators allegedly said or did during the course of the alleged conspiracy without such a showing concerns me in light of the Sixth Amendment's confrontation protection. *See* Borch, *The Use of Co–Conspirator Statements Under the Rules of Evidence: A Revolutionary Change in Admissibility*, 124 Mil.L.Rev. 163, 186–194 (Spring 1989). I write separately principally to expand on the point noted by Judge Kastl in Footnote 2 of his opinion, *i.e.*, that the *Inadi* and *Bourjaily*[2] cases are factually distinguishable from the situation we face in the instant case. I do not believe the holdings in those two cases constitute precedent that would necessarily bind the military to application of the "co-conspirator rule" in a case where the declarant was available as a witness.

In my judgment, the *Inadi* and *Bourjaily* decisions should be viewed as "fact-specific" when it comes to the confrontation privilege. I hold this view because of the rationale applied by the Supreme Court in reaching their holdings. As noted in our lead opinion, both cases involved conversations between various conspirators covertly tape-recorded while the conspiracy was in existence. *Inadi* involved lawfully intercepted and recorded telephone conversations between the various participants involved in a scheme to manufacture and distribute methamphetamine. The Court discussed the longstanding principles of law behind the "best evidence" rule; the preference for live testimony by a declarant as opposed to admission of his out-of-court statements. *See, e.g., Ohio v. Rob-*

*erts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (dealing with former testimony). The Court reasoned:

Those same principles do not apply to co-conspirators statements. Because they are made while the conspiracy is in progress, such statements provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court. When the Government—as here—offers the statement of one drug dealer to another in furtherance of an illegal conspiracy, the statement often will derive its significance from the circumstances in which it was made. Conspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand. Even when the declarant takes the stand, his in-court testimony seldom will reproduce a significant portion of the evidentiary value of his statements during the course of the conspiracy.

In addition, the relative position of the parties will have changed substantially between the time of the statements and the trial. The declarant and the defendant will have changed from partners in an illegal conspiracy to suspects or defendants in a criminal trial, each with information potentially damaging to the other. The declarant himself may be facing indictment or trial, in which case he has little incentive to aid the prosecution, and yet will be equally wary of coming to the aid of his former partners in crime. *In that situation, it is extremely unlikely that in-court testimony will recapture the evidentiary significance of statements made when the conspiracy was operating in full force.*

(Emphasis added.)

\*    \*    \*    \*    \*    \*

The admission of co-conspirators' declarations into evidence thus actually fur-

---

**1.** From a common sense standpoint, it seems incongruous to me to permit a challenge on confrontation grounds to the admission of a hearsay statement when there is no evidence of record that the declarant of that statement is unavailable to testify.

**2.** *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986).

thers the "Confrontation Clause's very mission" which is to "advance 'the accuracy of the truth-determining process in criminal trials.'" (Citations omitted.) 475 U.S. at 395–396, 106 S.Ct. at 1126.

*Bourjaily*, also a drug case, involved tape-recorded telephone conversations between the co-conspirators and an informant working for the Federal Bureau of Investigation. The conversations occurred during the course and in furtherance of the conspiracy. The Court noted the general rule requiring the prosecution to demonstrate *both* "the unavailability of the declarant and the 'indicia of reliability' surrounding the out-of-court declaration" before such statements can be admitted in evidence. 483 U.S. at 182, 107 S.Ct. at 2782. It reaffirmed its holding in *Inadi* eliminating the unavailability requirement, and further concluded that establishing independent indicia of reliability is not required either. "Accordingly we hold that the Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)." [3] 483 U.S. at 183–184, 107 S.Ct. at 2783.

I am not yet convinced that the principles of law established by these two Supreme Court decisions should be applied across the board to all out-of-court statements made by co-conspirators. The rationale upon which the holding in *Inadi* is based as quoted above, in my judgment, simply does not apply when the manner in which the out-of-court statement is being offered is through live testimony from the lips of one of the defendant's former co-conspirators.

Senior Judge MURDOCK (concurring in the result):

Like my brothers, I am convinced that this case should be affirmed, and I join them in agonizing over the legal issues in this case. The law is historically a conservative discipline. In my view, it is that reluctance to jump on every new legal bandwagon which provides much of the stability essential to making legal life predictable in our society.

The military justice system is a federal legal system, but it is not under the direct jurisdiction of any federal circuit court of appeals. Rather, we look for our binding guidance to the United States Court of Military Appeals and the United States Supreme Court. All other courts are merely persuasive. Just as the various circuit courts of appeals have not agreed on how to apply *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) and *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), so are we free to apply our own honestly determined interpretation of that Supreme Court precedent.

I agree that *Bourjaily* and *Inadi* are best read to be fact specific. The critical difference to me is that *Bourjaily* and *Inadi* involved recordings of statements made during the pendency of the conspiracy itself. By contrast, in this case we have testimony of Airman Basic Wentz, one of the conspirators, who is reporting in court what he overheard another conspirator, Airman Basic Dillard, say during the pendency of the conspiracy. The difference is sizable and significant. In the *Bourjaily* and *Inadi* situation, we have recordings of timely information which take the court's ear into the center of the conspiracy as it was occurring. For this reason, we can presume that it is a fair indication of what was being said, since it was not being prepared by persons who knew they had been caught. In fact, they undoubtedly assumed they would be successful and their conversations would never come to light. In the appellant's situation, we have after-the-fact testimony being presented by a witness who now knows what the stakes are. The witness knows by the time his testimony is given that he has been caught, he is testifying under a grant of immunity, and that positive testimony may be in his best interest. To me the element of reliability is missing in the present case.

In my view, we should key on these differences and hold that *Bourjaily* and *Inadi* do not force our decision in this case.

**3.** That provision of the Federal and Military Rules of Evidence is the same.

I would hold the testimony to be inadmissible, but find the remaining evidence sufficient to uphold the conviction.

Judge MILLS did not participate.