OPINION OF THE COURT
BECKER, Judge:
Among other issues, this case requires us to address a trial counsel’s discovery obligations under R.C.M. 701 and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and a client’s waiver of privilege as to confidential lawyer-client communications. Contrary to his pleas, members convicted the appellant of one specification of conspiracy to obstruct justice in violation of Article 81, UCMJ,[1] three specifications of conduct unbecoming an officer either by false swearing or attempting to influence a witness’ testimony in violation of Article 133, UCMJ,[2] and one specification of fraternizing with a female enlisted subordinate in violation of Article 134, UCMJ.[3] Appellant’s approved sentence is a dismissal, confinement for 3 months, and forfeiture of $500 pay per month for 3 months. He now asserts eight assignments of error. We find no prejudicial error and affirm.
I. BACKGROUND
In late 1991 and early 1992, the appellant was squadron section commander for the civil engineering squadron at Hill Air Force Base, Utah. He was married, but temporarily separated from his wife, who had remained be *523 hind at the appellant’s prior duty station. Airmen First Class Tina Mucci and Tana Chevalier worked in the squadron orderly room, which operated under the appellant’s supervision. They were also roommates in an enlisted dormitory on Hill. Technical Sergeant Delcine Mitchell was the immediate supervisor of both airmen.
In April 1992, as Airman Mucci was out-processing for an overseas assignment, her first sergeant (Senior Master Sergeant Brubaker) told her that her reassignment was on hold because of allegations of an improper relationship between her and the appellant. Airman Mucci then told Sergeant Brubaker that she had been dating the appellant.[4]
Later, on the advice of Sergeant Mitchell, Airman Mucci changed her story and denied dating the appellant. At various times over the next several weeks, as the formal command investigation progressed, Sergeant Mitchell advised Airman Mucci and Airman Chevalier (who had knowledge of the relationship) to “stick” to their revised stories and everything would come out all right. Several times during this period, Mucci and Chevalier overheard Sergeant Mitchell talking on the telephone with the appellant about the investigation. After these calls, Mitchell would again urge Mucci and Chevalier to stay with their stories. In May 1992, Airman Mucci denied to the command investigator, under oath, that she had dated the appellant, and Airman Chevalier backed up her story. Subsequently, the appellant telephoned Airman Mucci, and gave her advice similar to that from Sergeant Mitchell.
Because of these events, Airman Mucci and Sergeant Mitchell were investigated, as well as the appellant. Eventually, court-martial charges were preferred against all. In preparation for defending their clients, the appellant’s and Sergeant Mitchell’s detailed defense counsel interviewed Airman Mucci. At this time, a defense counsel had also been detailed for Airman Mucci. However, for reasons which are not explained in the record, Airman Mucci submitted to this interview without her lawyer present. Airman Mucci told these lawyers she had lied to Sergeant Brubaker, and there had been no dating relationship with the appellant. Also, Sergeant Mitchell’s lawyer had been in contact with Airman Mucci’s counsel, and learned from him that Mucci had told him she had lied to Sergeant Brubaker.
Meanwhile, in late May or early June 1992, at Sergeant Mitchell’s suggestion, Airman Mucci telephoned Major David Northup, an Air Force judge advocate assigned to civil litigation duties in Washington, D.C. About nine years before, Major Northup had been an area defense counsel at Kadena Air Base, Japan, and Sergeant Mitchell had been his client. In explaining the reason for her call, Airman Mucci told Major Northup that the legal office at Hill and her defense counsel were trying to get her to say untrue things about the appellant. After talking to both Airman Mucci and Sergeant Mitchell (who was present with Airman Mucci), Major Northup told Airman Mucci he could not agree to help her, and advised her of the proper procedure for requesting his services. Apparently, Airman Mucci decided not to formally request Major Northup as her defense counsel.
Later in June 1992, Airman Mucci went to lunch with Sergeant Mitchell and a Master Sergeant Uloth, who was Senior Master Sergeant Brubaker’s assistant. During lunch, they talked about the case and Airman Mucci told Sergeant Uloth that she had lied to Sergeant Brubaker.
Airman Mucci’s Article 32 investigation[5] convened in late June 1992. During that hearing, and with the advice and assistance of her detailed defense counsel, Airman Mucci submitted a lengthy written statement. In that statement, she admitted she had dated the appellant, she had lied to the command investigator, and had coordinated those lies with Airman Chevalier.
In December 1992, Airman Mucci testified as a government witness at Sergeant Mitchell’s Article 32 investigation, describing a dat *524 ing relationship with the appellant and Sergeant Mitchell’s role in persuading her to deny that relationship. Sergeant Mitchell’s defense counsel cross-examined Airman Mucci on her various inconsistent statements, including Mucci’s conversations with her own lawyer. In response, Airman Mucci admitted telling her lawyer, at one time, that she had lied to Sergeant Brubaker and had not dated the appellant. She did not assert a lawyer-client privilege to these questions, and no one at the Mitchell Article 32 hearing advised her of any privilege.
At the appellant’s trial, both Airmen Mucci and Chevalier testified under a grant of testimonial immunity. Airman Mucci described dates with the appellant. Airman Chevalier gave corroborating testimony. Both airmen admitted lying to the command investigator and, in Mucci’s case, to Mitchell’s and the appellant’s lawyers. However, Airman Mucci was not asked about, and she did not mention, her conversations with Major Northup or Sergeant Uloth.
Some time earlier, both Major Northup and Sergeant Uloth had testified at Sergeant Mitchell’s Article 32 investigation. Transcripts of their testimony (verbatim for Major Northup, and summarized for Sergeant Uloth) were available. The government representative at the Mitchell Article 32 served as assistant trial counsel in the appellant’s case. Several weeks before the Mitchell Article 32, the appellant’s defense counsel made discovery requests for “[a]ny handwritten, typed or recorded statements by ... any potential witnesses ...,” “[a]ny evidence of an exculpatory nature ...,” and “[a]ny known evidence tending to diminish credibility of witnesses----” The assistant trial counsel made extensive responses to these discovery requests, but he did not supplement his disclosures to include the Northup and Uloth testimony. Appellant did not learn about this testimony until after his trial.
In 1993, the appellant petitioned this Court for a new trial based on the newly discovered evidence of Airman Mucci’s statements to Major Northup and Sergeant Uloth. We denied that petition, but left the matter open for our Article 66, UCMJ,[6] review of the appellant’s case. In re Romano, Misc.Dkt. No. 93-11 (A.F.C.M.R. 14 July 1993). This brings us to the appellant’s assignments of error.
II. DISCOVERY: MUCCI’S STATEMENTS TO NORTHUP AND ULOTH
Appellant contends the trial counsel’s failure to disclose the testimony of Major North-up and Sergeant Uloth at the Mitchell Article 32 hearing is prejudicial error. The government’s reply, while not expressly conceding the trial counsel erred, focuses on lack of prejudice to the appellant.
A. General Rules and Standards of Review
An accused’s discovery rights derive from the Constitution, statute, and the Rules for Courts-Martial. Appellant’s arguments implicate all these sources.
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that prosecution suppression of evidence favorable to the defense, after a request for such information, violates due process when the evidence is material to either guilt or punishment. This is the rule irrespective of the good faith or bad faith of the prosecution. Id. at 87, 83 S.Ct. at 1196. In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court opined that a constitutional duty to disclose exists, even without a defense request, when evidence is “obviously exculpatory” or “so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce....” Id. at 107, 96 S.Ct. at 2399. The Brady-Agurs principle has been codified in R.C.M. 701(a)(6), which imposes a duty on the trial counsel to disclose information favorable to the defense “as soon as practicable,” without regard to whether the defense has made a request. See also MCM, 1984, app. 21 at A21-32 (1994 ed.).
Evidence impeaching a prosecution witness’ credibility is not automatically “Bra *525 dy material.” However, impeachment evidence rises to that level if the “reliability of a given witness may well be determinative of guilt or innocence.” Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 765, 31 L. Ed.2d 104 (1972). See also Agurs; United States v. Stone, 40 M.J. 420, 422-23 n. 2 (C.M.A.1994); United States v. Green, 37 M. J. 88 (C.M.A.1993); United States v. Watson, 31 M.J. 49 (C.M.A.1990).
In addition to these constitutional requirements, the Uniform Code of Military Justice guarantees both sides “equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe.” Article 46, UCMJ.[7] The President’s rules for discovery of evidence are found in R.C.M. 701. Besides the Brady-Agurs codification described above, R.C.M. 701 sets out a series of disclosure obligations for each side. Some of these obligations are triggered by a request; others are imposed regardless of request. Of significance here is R.C.M. 701(a)(2)(A), which requires trial counsel, upon defense request, to allow inspection of “[a]ny ... papers, documents ... or portions thereof, which are within the possession, custody, or control of military authorities, and which are material to the preparation of the defense — ” Under R.C.M. 701(d), the parties have a continuing duty to disclose discoverable information coming to their attention after such information has been requested or otherwise previously required to have been produced.
When prosecutors fail in their disclosure duties, our search for prejudice varies depending on the magnitude of the error. A violation of R.C.M. 701 which does not implicate Brady matters is harmless “unless the error materially prejudices the substantial rights of the accused.” Article 59(a), UCMJ;[8] Stone, 40 M.J. at 422. However, a Brady-style due process violation occurs whenever the undisclosed evidence is material to the defense, that is, “there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” Id. at 423 (quoting Watson, 31 M.J. at 54). Moreover, when Brady information has been requested but not disclosed, “the evidence will be considered ‘material unless failure to disclose’ can be demonstrated to ‘be harmless beyond a reasonable doubt.’” Stone, 40 M.J. at 423 (quoting United States v. Hart, 29 M.J. 407, 410 (C.M.A.1990)). In applying any of these standards, we consider “the entire record.” Stone, 40 M.J. at 423 (quoting Agurs, 427 U.S. at 112, 96 S.Ct. at 2401).
B. Decision
Although the defense discovery request did not specifically request access to the Mitchell Article 32 report, it was sufficient to encompass Major Northup’s and Sergeant Uloth’s testimony. Without question, Airman Mucci’s statements to both men were in the custody of military authorities, and material to the preparation of the appellant’s defense. The prosecution had a continuing duty to disclose such information, as it came to its attention. Therefore, the prosecution’s failure to disclose these statements in response to the defense request violated R.C.M. 701(a)(2)(A) and (d).
This evidence also was potential Brady material. Although corroborated by Airman Chevalier and circumstantial evidence, Airman Mucci's reliability might have been the determining factor to the trier of fact. Therefore, evidence of a prior inconsistent statement directly contradicting the substance of her testimony against the appellant was obviously probative of her credibility. See Mil.R.Evid. 613. The prosecution should have disclosed the Northup and Uloth testimony to the appellant, even without a request. Given the defense did make a request, there certainly should have been disclosure.
Despite these failures, we see no prejudice to the appellant under any standard of review, even the rigorous “harmless beyond a reasonable doubt” standard. Airman Mucci’s *526 statements to the command investigator and various defense attorneys, which also directly contradicted her testimony against the appellant, were well developed before the members. Two more statements to this effect, during a time when Airman Mucci was admittedly trying to convince everyone that nothing had gone on, would have added virtually nothing to the defense’s assault on her credibility. Indeed, we see this evidence as doing the appellant more harm than good. If introduced at trial, Airman Mucci’s statements to Major Northup and Sergeant Uloth — both made in the presence of Sergeant Mitchell — would have fit nicely into the prosecution’s theory of a conspiracy to obstruct justice involving the appellant, Sergeant Mitchell, Airman Mucci, and Airman Chevalier. Considering the entire record, we find that the prosecution’s failure to disclose this evidence was harmless beyond a reasonable doubt.
III. WAIVER OF LAWYER-CLIENT PRIVILEGE
On cross-examination of Airman Mucci, the appellant’s trial defense counsel tried to ask her about her prior statement to her lawyer, in which she had denied dating the appellant. The trial counsel objected, citing the lawyer-client privilege. See Mil.R.Evid. 502. In an Article 39(a)[9] session, Airman Mucci testified she had not understood her privilege at the Mitchell Article 32 hearing, but she had since consulted with her detailed counsel and now wanted to assert the privilege. She also testified she had not consented to any disclosure of their conversations by her lawyer to Sergeant Mitchell’s lawyer. The defense argued the privilege had been waived, first by the disclosure by Airman Mucci’s lawyer to Sergeant Mitchell’s attorney, and then by Airman Mucci’s admission on cross-examination at the Mitchell Article 32 hearing. The military judge ruled Airman Mucci had not waived the privilege, and sustained the trial counsel’s objection. Appellant now asserts this was prejudicial error.
A. General Rules and Standards of Review
As a general rule, confidential communications between a client and her lawyer are privileged. Mil.R.Evid. 502(a). However, a statement intended to be disclosed to third persons is not confidential. Mil.R.Evid. 502(b)(4). There are various other exceptions to the general rule of privilege. See Mil.R.Evid. 502(d). The lawyer-client privilege belongs to the client, not the lawyer. MiLR.Evid. 502(a). Counsel may not waive the privilege by disclosing confidential communications without his client’s consent. See United States v. Ankeny, 30 M.J. 10 (C.M.A. 1990) .
A holder of a privilege may waive it by disclosing, authorizing disclosure, or consenting to disclosure of a privileged communication to third persons. Mil.R.Evid. 510(a). While the mere fact that a privilege-holder testifies will not waive a privilege, voluntary testimony concerning a communication may waive the privilege as to that communication. Mil.R.Evid. 510(b). However, waiver will occur only “under such circumstances that it would be inappropriate to allow the claim of privilege.” Mil.R.Evid. 510(a).
A voluntary disclosure by a client to third persons ordinarily waives the lawyer-client privilege, not only to the communication disclosed but often as to other related communications. In re Sealed Case, 676 F.2d 793, 808-09 (D.C.Cir.1982), cited in Sheet Metal Workers Intl. Assn. v. Sweeney, 29 F.3d 120, 125 (4th Cir.1994). Waiver generally occurs even when a client is not sensitive to her right to claim privilege at the time of the voluntary disclosure:
The waiver here will stand even if the disclosure was made without the holder realizing the impact of the disclosure. Since the holder has destroyed the privacy or security afforded by the privilege by disclosure repair cannot be made —
Stephen A. Saltzburg et al, Military Rules of Evidence Manual at 606 (3d ed. 1991) .
In our view, however, the waiver rule is “flexible enough to treat some unknowing disclosures as situations in which it would be *527 appropriate to permit the holder subsequently to claim the privilege.” Id. See also Champion Intl. Corp. v. International Paper Co., 486 F.Supp. 1328 (N.D.Ga.1980) (inadvertent disclosure of small amount in discovery response is not a waiver of privilege for all lawyer-client communications). Military case law has favored waiver where clients have made intentional, selective disclosures of lawyer-client communications to support their cases. Under those circumstances, it was not fair to allow the clients to claim privilege for other, related communications. See United States v. Jackson, 30 M.J. 687, 689-90 (A.C.M.R.), pet. denied, 32 M.J. 43 (C.M.A.1990); United States v. Rushatz, 30 M.J. 525, 535-36 (A.C.M.R.), aff'd 31 M.J. 450 (C.M.A.1990). We have found no precedent for waiver of privilege under the circumstances present here.
As with other issues of admissibility under the Military Rules of Evidence, we review the military judge’s ruling applying an abuse of discretion standard. United States v. Vaughters, 42 M.J. 564, 566 (A.F.Ct. Crim.App.1995). See also United States v. Walker, 42 M.J. 67, 68, 74 (1995); United States v. Barrow, 42 M.J. 655, 663 (A.F.Ct. Crim.App.1995). If the military judge erred, we must then decide if the error materially prejudiced the substantial rights of the appellant. Article 59(a), UCMJ.
B. Decision
According to Airman Mucci’s uncontroverted testimony, the communication in question was not intended to be passed on to others, and she did not consent to disclosure. The communication does not come under an exception to the general rule listed at Military Rule of Evidence 502(d). There is no question that the communication was initially privileged, and Airman Mucci’s lawyer did not waive that privilege when he disclosed it to Sergeant Mitchell’s counsel.[10] Appellant does not now contend otherwise. There is also no question that Airman Mucci herself disclosed the communication at the Mitchell Article 32 hearing. The sole issue here is whether the military judge abused his discretion in allowing Airman Mucci to reclaim the privilege as to this communication at the appellant’s trial. We hold that he did not abuse his discretion.
Although the military judge did not cite Military Rule of Evidence 510 when he made his ruling, it is clear from his comments that he considered the circumstances appropriate to allow Airman Mucci to claim her privilege. We agree. At the Mitchell Article 32 hearing, Airman Mucci was a 20 year-old, junior-grade airman. Although represented by counsel, she was on her own in the hearing room. She disclosed the privileged communication under cross-examination by a commissioned officer, trained and experienced as a trial lawyer. No one advised her, either before or during the hearing, of her privilege to refuse to answer the question. The only reason Sergeant Mitchell’s lawyer knew to ask the question in the first place was an unauthorized disclosure of the communication by Airman Mucci’s counsel. Under the circumstances, we conclude that the military judge did not abuse his discretion in allowing Airman Mucci to reclaim her privilege.[11]
Even if the military judge erred, we find no material prejudice to the substantial rights of the appellant. As explained above, it was no secret to the members that Airman Mucci had, at one time, been telling everyone that she and the appellant had not dated. *528 Another cross-examination admission by Airman Mucci to this effect would have been of little benefit to the appellant and, in light of the conspiracy charge, may have been harmful.
IV. REMAINING ISSUES AND CONCLUSION
We resolve the remaining assignments of error against the appellant. Under the circumstances, the military judge did not commit plain error by informing the members, without defense objection, that Sergeant Mitchell would assert her right to remain silent if called to testify. He also did not commit plain error by failing to give a limiting instruction, in the absence of a defense request. See Mil.R.Evid. 103(a)(1), 103(d), 301(f)(1), 512(a)(2), 512(c); R.C.M. 920(f); United States v. Fisher, 21 M.J. 327, 328-29 (C.M.A.1986). The military judge did not abuse his discretion in admitting Sergeant Mitchell’s out-of-court declarations as statements of a co-conspirator. See Mil.R.Evid. 801(d)(2)(E); Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); United States v. Marshall, 31 M.J. 712, 713-14 (A.F.C.M.R.1990), set aside and remanded on other grounds, 32 M.J. 299 (C.M.A.1991) (summary disposition). Cf. United States v. Stroup, 29 M.J. 224, 227-28 (C.M.A.1989). The military judge did not abuse his discretion in denying defense access to notes of certain witness interviews as attorney work-product. See 18 U.S.C. § 3500 (1988) (the Jencks Act); R.C.M. 914; R.C.M. 701(a)(2)(A); United States v. Vandenwier, 25 M.J. 263, 268-69 (C.M.A.1987). The evidence is legally sufficient to support all convictions, and persuades us of the appellant’s guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979); Article 66(c), UCMJ; United States v. Turner, 25 M.J. 324, 325 (C.M.A.1987). Appellant’s sentence is not inappropriately severe. United States v. Healy, 26 M.J. 394 (C.M.A.1988).
The findings and sentence are correct in law and fact. Accordingly, they are
AFFIRMED.
Senior Judge PEARSON and Judge MORGAN concur.

. 10 U.S.C. § 881 (1988). The military judge severed a second Article 81 specification at the request of the prosecution, after granting a defense motion to suppress evidence.

. 10 U.S.C. § 933 (1988). Appellant was found not guilty of two Article 133 specifications alleging sexual harassment and oppression of female enlisted subordinates. At prosecution request, the military judge severed another Article 133 specification (alleging false testimony) after granting a defense suppression motion.

. 10 U.S.C. § 934 (1988). Appellant was acquitted of another fraternization specification, alleging inappropriate social conduct with two male airmen.

. It is appropriate to note that, although the appellant was convicted of fraternizing with Airman Mucci, there was no evidence or allegation of a sexual relationship.

. Article 32, UCMJ, 10 U.S.C. § 832 (1988).

. 10 U.S.C. § 866 (1994).

. 10 U.S.C. § 846 (1988).

. 10 U.S.C. § 859(a) (1994).

. Article 39(a), UCMJ, 10 U.S.C. § 839(a) (1988).

. Before readers pass harsh judgment on Airman Mucci's lawyer, keep in mind that, at the time of the disclosure, Mucci, Chevalier, Mitchell, and the appellant were all engaged in cooperative defense. Their lawyers acted in reliance on the accounts given to them by their respective clients. It was some weeks later that Mucci became the first stone to fall out of this common wall. Notwithstanding, this case should serve as an object lesson for defense counsel: obtain client consent before revealing information to another defense lawyer, even one whose client appears to be in concert of interest.

. We caution against an overly broad reading of this opinion. We do not hold, as a blanket principle, that persons testifying at hearings must be advised of their right to invoke a privilege before their disclosures are held to be waiver. We hold only that, in this case, the military judge did not abuse his discretion in finding the individual circumstances of Airman Mucci’s disclosure did not bar her later assertion of the privilege.