UNITED STATES, Appellee

v.

JOHN E. MARSHALL and CLARENCE L. SHELTON,
Privates First Class, U. S. Army, Appellants

2 USCMA 54, 6 CMR 54

No. 548

Decided November 14, 1952

LT. COL. James C. Hamilton, USA, for Appellants.

LT. COL. Paul J. Leahy, USA, LT. COL. Thayer Chapman, USA, and 1ST LT. Bernard A. Feuerstein, USA, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Private First Class John E. Marshall and Private First Class Clarence L. Shelton were tried by general court-martial in Korea on charges of rape and murder. Both accused were found guilty of rape; not guilty of murder, and both were sentenced to death. The findings and sentence have been upheld by Army reviewing authorities, and the case is before us for mandatory review pursuant to Article 67(b)(1) of the Uniform Code of Military Justice, 50 USC § 654. Appellate defense counsel has urged numerous errors which will be discussed below.

A young Korean boy testified that on May 13, 1951, at Konggong-myon, Changbong-Ni, Korea, three American soldiers, two of whom were identified as the accused Shelton and Marshall, came to his house. He observed them commit acts of bestiality with cows. When the soldiers saw a seventy-two-year-old Korean woman laughing at them, they invaded her home, tore off her clothing, and beat her. While Shelton held the woman's arms and Marshall stood guard, the third soldier, unidentified, had sexual intercourse with her despite her resistance. After the unidentified soldier finished the act of intercourse, he took the woman's purse, removed 2000 won and threw the purse in the fire. Another Korean testified that he observed all the above acts, but could not identify the soldiers. A stipulation was introduced which recited that a Navy doctor would testify that he examined the seventy-two-year-old Korean woman on May 15, 1951, and found numerous bruises and lacerations, in-

cluding contusions in the vaginal area. Extra-judicial statements of each of the accused were received in evidence. Shelton admitted visiting a Korean house with Marshall on the night in question, but said nothing concerning any act of intercourse. Marshall admitted going to the house with Shelton and another soldier and added that they agreed to "get" the old woman, having failed to find any young girls. He admitted having sexual intercourse with the woman. It should also be noted that there was other evidence in the record concerning the circumstances surrounding the death of a Korean baby. This death was involved in the murder charge against both accused. The testimony indicated that death ensued when, during the struggle between the accused and a Korean woman, the baby fell to the ground. The evidence did not clearly establish that this was not the result of an accident. Apparently, this is the reason for the court's finding of not guilty on this charge. In view of this acquittal, there is no necessity for discussing this evidence in detail.

We think the evidence outlined above is sufficient to support the findings of rape. Two Koreans (one ██ of whom identified the accused as the participants) testified concerning the acts of intercourse, the use of force, and the participation by both soldiers. This, together with the testimony of the doctor, is sufficient to establish that the offense of rape was probably committed. Adding the admissions contained in the accused's pre-trial statements—both of

which remove any possibility of mistaken identification—there is ample proof of guilt. Marshall's participation as "guard" is sufficient to implicate him as a principal under an aider and abettor theory. Manual for Courts-Martial, United States, 1951, paragraph 302; United States v. Evans and Parker (No. 457), 1 USCMA 541, 4 CMR 133, decided August 8, 1952. It is not material that the identity of the third soldier was not established as named in the specification. This was, at most, surplusage. The crime of joint rape by the two accused was completed when the woman was raped and both accused participated actively in the act. There is here no prejudicial variance. United States v. Hopf (No. 372), 1 USCMA 584, 5 CMR 12, decided August 14, 1952.

It is urged by defense that prejudicial error was committed by the admission of evidence as to the commission by the accused of acts of bestiality with animals and the taking of the woman's purse. We think not. The acts of bestiality indicate lustful and immoral passions by the accused immediately prior to the commission of the alleged rape, and thus tend to establish motive and intent. The theft mitigates against the possibility of consent by the woman. Perhaps less important under the circumstances of this case, these acts also show the identity of the accused as participators in this incident. Finally, the acts of bestiality and theft are closely intertwined with the entire incident. All of these factors indicate that the testimony as to sodomy and robbery come within well-recognized exceptions to the rule prohibiting proof of prior acts of misconduct. Manual for Courts-Martial, United States, 1951, paragraph 138(g); 1 Wharton, Criminal Evidence, 11th ed, §§ 347, 348, 351; Smith v. United States, 173 F2d 181 (CA9th Cir); Bracey v. United States, 142 F2d 85 (CA DC Cir); Burcham v. United States, 163 F2d 761 (CA DC Cir); Hodge v. United States, 126 F2d 849 (CA DC Cir); Gordon v. United States, 164 F2d 855 (CA6th Cir).

One of the principal prosecution witnesses was a Korean boy who testified that he was twelve years old by the Korean system of computing age, which would make him ten or eleven years by Occidental computation. It is urged that this boy was erroneously allowed to testify without sufficient examination as to his competency as a witness. It will be noted at the outset that defense raised no objection to the competency of the witness. He was affirmed and testified in some detail. His testimony was intelligent, clear and not inconsistent. We have already stated that the competency of children as witnesses is not dependent upon their age, but upon their apparent sense and their understanding of the difference between truth and falsehood and the necessity of telling the truth. United States v. Slozes (No. 12), 1 USCMA 47, 1 CMR 47, decided November 20, 1951. The Manual for Courts-Martial, United States, 1951, paragraph 148, reiterates the above rule and goes on to state that "any known objection to the competency of a witness should be made before he is sworn." As already noted, no such objection was made here. Defense gave no indication whatsoever of dissatisfaction with the witness. However, we are not satisfied to rest our decision on this point alone. It is more important that the testimony of this boy gives no indication of testimonial inadequacy. Decision as to whether or not a child should be permitted to testify rests primarily with the law officer, who is and must be vested with considerable discretion. Applying the standard established in United States v. Slozes, supra, we find no abuse of discretion here.

We turn next to alleged error in the instructions of the law officer on the elements of the offense of rape. The law officer instructed the court as follows: "Court is advised that the elements of the offense in the charge are as follows: That each accused concerned had carnal knowledge of a certain female as alleged and that the act was done by force and without her consent." This instruction follows the elements given in paragraph 179b of the 1949

Manual. It is claimed that it was inadequate since there was no definition of "carnal knowledge." We do not think this omission is fatal. The element of carnal knowledge involved in rape is not a technical legal term, and is capable of understanding by persons of ordinary intelligence. See Bloch v. United States, 261 Fed 321, 325 (CA 5th Cir); State v. DeWitt, 186 Mo 61, 84 SW 956. It is noteworthy, also, that defense had ample opportunity to request amplification of the instructions but did not do so. See United States v. Rhoden (No 153), 1 USCMA 193, 2 CMR 99, decided February 26, 1952; United States v. Bushwick Mills, 165 F2d 198 (CA2d Cir).

It is also urged, in relation to the instructions, that the law officer erred in informing the court that ██ conviction required proof of carnal knowledge by each of the accused. It is true that this is not a correct statement of the law. Either or both of the accused could have been convicted on a basis of aiding and abetting the commission of the offense by another. Manual for Courts-Martial, United States, 1951, paragraph 156. However, it appears to us that this instruction, in setting a higher standard of proof than was actually required was not prejudicial but beneficial to the accused. If defense had desired an instruction on the acts necessary to involve one who assists in but does not complete the act alleged as a principal through an aider and abettor theory, there was ample opportunity for such a request. However, in view of the evidence, we think that defense probably preferred to have the court informed that they must find actual participation in the act of intercourse in order to convict.

Finally, we turn to the defense contention that prejudicial error was committed by the frequent use ██ of the word "rape" by prosecution witnesses in testifying concerning the acts of the accused. It is true that the term "rape" designates the total legal offense charged, involves elements of determination reserved for the jury, and thus represents an improper conclusion of fact and law on the part of the witness. However, the prosecution witnesses who used this term were Korean nationals. The actual words used by the witnesses were translated into English by an interpreter. None of the witnesses was highly educated. It appears likely that the witnesses or the interpreter used the word as a statement of fact as to what was observed. As such, it would be proper. See United States v. De Carlo (No. 32), 1 USCMA 90, 1 CMR 90, decided December 28, 1951. But we place here more stress on the fact that the witnesses involved were uneducated persons speaking in a foreign language. The niceties of rules of evidence involving testimonial limitations cannot reasonably be rigidly enforced under such circumstances. Because of this and because defense offered no objection to the testimony, we cannot say that it constituted prejudicial error.

This disposes of the principal allegations of error advanced by the defense. Other and minor claims of prejudicial error have been fully considered but are not deemed worthy of extended discussion here. It is sufficient to say that we have given careful consideration to the record and find no error prejudicial to the substantial rights of the accused.

The brief, almost summary, record of trial resulting in conviction and imposition of the death sentence indicates a lack of effort on the part of defense counsel, and a lack of appreciation of the rights of these accused. However, we have been unable to discover any error of law which requires a rehearing.

In spite of the fact that the offense for which the accused were convicted was brutal and repulsive, a more diligent and vigorous effort should have been made in their defense. It appears to us that taking everything into consideration in this record it is inappropriate to impose the death penalty. That, however, is beyond our purview. The decision of the board of review is affirmed.

Judge BROSMAN concurs.

Judge LATIMER not participating. A judge who is not present at oral arguments of the case is not permitted to

participate in the decision. Judge Latimer was in the hospital at the time of argument and his views are therefore not expressed.