UNITED STATES, Appellee

v.

David W. STONE, Sergeant First Class, U.S. Army, Appellant.

No. 93–1116.
CMR No. 9101341.

U.S. Court of Military Appeals.

Argued June 1, 1994.

Decided Sept. 20, 1994.

For Appellant: *Captain Michael A. Egan* (argued); *Lieutenant Colonel James H. Weise* (on brief); *Captain Robert Lane Carey.*

For Appellee: *Captain John G. Giovannelli* (argued); *Colonel Dayton M. Cramer, Major James L. Pohl, Captain Kenneth G. Wilson, Captain Glen L. Kirschner* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

During May and June of 1991, appellant was tried by a general court-martial com-

posed of a military judge sitting alone at Fort Campbell, Kentucky. Contrary to his pleas, he was found guilty of carnal knowledge (2 specifications), making a false speech regarding his actions during Operation Desert Shield/Storm causing discredit to the armed forces, and the unauthorized wearing of a green beret, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 18 months, total forfeitures, and reduction to Private E1. The convening authority approved the adjudged sentence on September 17, 1991. On February 25, 1993, the Court of Military Review affirmed the findings and sentence. On April 2, 1993, that court granted appellant's petition for reconsideration, vacated its earlier decision, and permitted appellant to file a supplemental assignment of error. On April 30, 1993, the Court of Military Review again affirmed the findings and sentence. 37 MJ 558.

On October 29, 1993, this Court granted review of the following issues:

## I

WHETHER TRIAL COUNSEL IMPROPERLY WITHHELD REQUESTED DISCOVERY INFORMATION PERTAINING TO A TRAVEL FRAUD INVESTIGATION OF A CRITICAL GOVERNMENT WITNESS.

## II

WHETHER THE EVIDENCE LEGALLY IS INSUFFICIENT TO SUPPORT THE FINDINGS OF GUILTY TO SPECIFICATION 1 OF CHARGE II (FALSE SPEECH CAUSING DISCREDIT TO ARMED FORCES).

We hold that trial counsel's nondisclosure and suppression of the requested discovery information was error, but such error was harmless beyond a reasonable doubt. *See United States v. Watson*, 31 MJ 49, 54–55 (CMA1990); *United States v. Hart*, 29 MJ 407 (CMA1990). We also hold that the evidence in this record was legally sufficient to support the findings of guilty of the offense

of making a false speech which caused discredit to the armed forces. *See generally Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Harper*, 22 MJ 157 (CMA1986).

The facts found by the Court of Review can be summarized as follows. Prior to January of 1991, appellant was deployed to Saudi Arabia with the 101st Airborne Division (Air Assault) under Operation Desert Shield. In January, 1991, appellant returned to his home in Vincennes, Indiana, on emergency leave. Hearing of his return, the principal of appellant's high school alma mater invited him to address the student body regarding his Persian Gulf experiences. Appellant agreed, and on February 5, wearing his Army uniform and a green beret, he spoke before two student assemblies. During these speeches, appellant falsely described parachuting from 50,000 feet into Baghdad as leader of a Special Forces team. He also made false claims that he had been in Iraq in 1990, before the outbreak of hostilities, and warned the students that they could be at risk from terrorists seeking retaliation against him.

The local newspaper covered the event and published the story. When the newspaper's publisher noticed the article on a local hero, he forwarded it to his older brother, then-Vice President Dan Quayle. Appellant's falsehoods were discovered when the Vice President's office sent the newspaper clipping to the Pentagon. 37 MJ at 561–62.

During appellant's court-martial, a government witness, Master Sergeant (MSG) Youhouse of the Special Forces, described the reaction of Special Forces personnel to appellant's false speech. On the day after the court-martial, trial counsel notified defense counsel that MSG Youhouse was being investigated by the Criminal Investigation Command for travel fraud. Trial counsel was aware of the investigation before appellant's court-martial. Nevertheless, he failed to notify the defense of this investigation despite a specific discovery request for any impeachment information on proposed government witnesses which was in the Government's

control, possession, or custody. 37 MJ at 568.

## I

■ The first issue in this case asks whether it was improper for trial counsel to withhold from the defense requested impeachment information concerning a government witness. The Court of Military Review, however, found that "it was error for the trial counsel, in response to a specific discovery request, to fail to disclose that one of the government's witnesses was under criminal investigation." 37 MJ at 569. The real dispute in this case is what type of error occurred and what standard of prejudice should be utilized in determining whether appellant's conviction should be reversed. Relying on this Court's decision in *United States v. Eshalomi*, 23 MJ 12 (CMA1986), appellant argues that "the failure to disclose the specifically requested impeachment evidence clearly violates RCM 701 and [his] right to a fair trial and should lead to a reversal of the findings of guilty *without speculation as to its effect on the outcome of the case.*" Final Brief at 5. We reject appellant's view of our case law and his argument for a *per se* reversal rule.

The first question in this case is whether it was error for trial counsel, prior to trial, to fail to disclose to the defense information in its possession that MSG Youhouse was under investigation for travel fraud. In this regard, we note that the defense requested impeachment information on all government witnesses which was in the control of the Government as part of its pretrial discovery request. *See* RCM 701(a)(2)(A), Manual for Courts–Martial, United States, 1984. We further note that MSG Youhouse was a government witness and his investigation for a crime of dishonesty was relevant to his credibility as a witness. *See Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Green*, 37 MJ 88 (CMA1993). Thus, clearly such information was "material to the preparation of the defense" within the meaning of RCM 701(a)(2). *See generally United States v. Lloyd*, 992 F.2d 348, 351 (D.C.Cir.1993).[1] Nevertheless, such a discovery error must be tested for prejudice under Article 59(a), UCMJ, 10 USC § 859(a). *See United States v. Simmons*, 38 MJ 376, 382 (CMA1993); *United States v. Ross*, 511 F.2d 757, 764–65 (5th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).

■ A second problem in this case arises as a result of trial counsel's suppression of this impeachment evidence at appellant's court-martial. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States, supra.*[2] Whether Constitutional error occurred on this basis

1. In this case the Court of Appeals for the District of Columbia described a similar right to discovery provided in Fed.R.Crim.P. 16, as follows:

> Thus we turn to the defendant's argument that the prior returns are material and discoverable under Rule 16(a)(1)(C) and that the trial court improperly imposed a "heavy burden" of materiality in denying his Rule 16 motion. Rule 16(a)(1)(C) states that
> > Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents ... or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense....
> Fed.R.Crim.P. 16(a)(1)(C) (1993). To show materiality under this rule the defendant must demonstrate that the requested evidence
> > bears some abstract logical relationship to the issues in the case.... There must be some indication that the pretrial disclosure

of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor.
*United States v. Caicedo–Llanos*, 960 F.2d 158, 164 n. 4 (D.C.Cir.1992) (quoting *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir.1975)); *see United States v. George*, 786 F.Supp. 56, 58 (D.D.C.1992). This materiality standard normally "is not a heavy burden," *id.;* rather, evidence is material as long as there is a strong indication that it will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* (quoting *United States v. Felt*, 491 F.Supp. 179, 186 (D.D.C.1979)).
(Emphasis omitted.)

2. Impeachment matters are not *per se* material to the defense for purposes of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Cf. United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C.Cir.1993) (material for purposes of Fed.R.Crim.P. 16(a)(1)(C)). The undisclosed im-

depends upon whether the suppressed evidence was material and favorable to the defense. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). As Judge Cox stated in *United States v. Watson*, 31 MJ 49 (CMA1990), the test for materiality is whether

> there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Id.* at 54, *quoting United States v. Bagley*, *supra.* Such an inquiry calls for assessment of the omission in light of the evidence in "the entire record." *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976).[3]

Finally, in *United States v. Hart*, 29 MJ 407 (1990), this Court indicated a slightly different test where *Brady v. Maryland*, *supra*, type information is requested prior to a court-martial, but is not disclosed prior to trial or later at trial. This Court said:

> In his opinion at the court below, Judge Gilley adopted the premise that, under Article 46, discovery available to the accused in courts-martial is broader than the discovery rights granted to most civilian defendants. From this, he correctly reasoned that, where prosecutorial misconduct is present or where the Government fails to disclose information pursuant to a specific request, the evidence will be consid-

ered "material unless failure to disclose" can be demonstrated to "be harmless beyond a reasonable doubt." Where there is no request or only a general request, the failure will be "material only if there is a reasonable probability that" a different verdict would result from disclosure of the evidence. [*U.S. v. Hart,*] 27 MJ [839] at 842 [ (1989) ].. We agree with Judge Gilley.

29 MJ at 410. Under all three tests, recourse to *the entire record* of trial is required to determine the effect of the undisclosed evidence on the conviction. *See generally United States v. Eshalomi*, *supra*.[4]

Turning to the record in this case we observe that appellant was charged with the following:

> [appellant] ... did, at or near Edwardsport, Indiana, on or about 5 February 1991, without prior approval, willfully and wrongfully give a speech before the North Knox High School student body knowing that local media was present, and give a false account of his actions in Iraq during Operation Desert Shield/Storm, such account was then known by the accused to be false, *resulting in embarrassment to the Army and dishonor to him, such conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.*

(Emphasis added.)

MSG Youhouse was called by the prosecution in its case-in-chief to show appellant was

peachment evidence must be examined in light of the entire record of trial to determine whether such evidence may be determinative of guilt or innocence. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Starusko*, 729 F.2d 256, 260 (3d Cir.1984); *United States v. Green*, 37 MJ 88, 90 (CMA1993); *United States v. Watson*, 31 MJ 49, 54–55 (CMA1990).

3. The Supreme Court has chosen to define materiality for purposes of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by including a requirement that the defense show the omitted evidence creates a reasonable doubt as to the defendant's guilt which did not otherwise exist. *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976). Consequently, the Government can defeat a *Brady* claim at trial by showing that omis-

sion of the undisclosed evidence was harmless beyond a reasonable doubt. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 58, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987); *Exline v. Gunter*, 985 F.2d 487, 491 (10th Cir.1993).

4. *United States v. Hart*, 29 MJ 407, 410 (CMA1990), removes the defense burden to show reasonable doubt from the omitted evidence in those cases where prosecutorial misconduct occurs or the defense specifically requested the omitted materials. *See United States v. Bagley*, 473 U.S. 667, 678–79, 105 S.Ct. 3375, 3381–82, 87 L.Ed.2d 481 (1985). *See generally* Art. 46, Uniform Code of Military Justice, 10 USC § 846, and RCM 701, Manual for Courts–Martial, United States, 1984. It does not, however, preclude the Government from using the entire record to show that omission of the evidence was harmless beyond a reasonable doubt.

guilty of the above offense. He testified about the impact which a newspaper article on appellant's speech had on the soldiers in his battalion in Saudi Arabia. He testified that there was anger among soldiers because the Special Forces had been represented by an unknown servicemember in a speech containing false information. However, MSG Youhouse was unable to directly testify as to whether the speech had been prejudicial to the good order and discipline of the armed services.

The military judge found appellant guilty of conduct of a nature to bring discredit on the armed forces, in violation of Article 134. He was found not guilty of conduct prejudicial to the good order and discipline of the armed forces, the alternative element of the charged offense for which MSG Youhouse's testimony was relevant. It is also important to note that MSG Youhouse did not provide substantial testimony regarding the service-discrediting element of this offense.. Instead, the Government called two students, a teacher, the reporter who covered and wrote about the speech, and the then-Public Affairs Officer with the U.S. Army Special Operation Command, Fort Bragg, N.C., at the time of the speech. The four civilian witnesses testified about their disbelief and disappointment in discovering that appellant had fabricated the story. The Public Affairs Officer testified about the Army's effort to avoid discrediting the service in light of the information that is routinely disclosed and withheld from the public regarding special operations. In these circumstances, we conclude that the failure to disclose and the later suppression of impeachment evidence about MSG Youhouse was clearly harmless error beyond a reasonable doubt. *See Pennsylvania v. Ritchie* and *United States v. Hart,* both *supra.*

## II

■ The second issue in this case is whether the evidence of record is legally sufficient to sustain the finding of guilty to the specification of making a false speech to the discredit of the armed services. Appellate defense counsel contend that since appellant's speech was well-received at the time it

was given, the prosecution failed to prove beyond a reasonable doubt that the speech both embarrassed and brought discredit on the armed forces. Interestingly, appellant contends that appellant's "speech was warmly received and, when viewed in context, brought only credit, praise, and support to the war efforts." Final Brief at 8. We, however, cannot view the evidence in this case from a perspective most favorable to the defense.

In *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d 560, the Supreme Court established the Constitutional test for legal sufficiency of the evidence on appellate review. It is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Hart,* 25 MJ 143, 146 (CMA1987), *cert. denied,* 488 U.S. 830, 109 S.Ct. 85, 102 L.Ed.2d 61 (1988); *United States v. Harper,* 22 MJ 157 (CMA1986).

As noted above, two students, a teacher, and the reporter testified about their disbelief and disappointment upon discovering that appellant had misrepresented himself and the Army. Although all witnesses initially reacted to the speech with great enthusiasm and pride, these witnesses testified that, after they learned that the speech had been false, they experienced varying degrees of disappointment and loss of trust in the truthfulness of servicemembers. Furthermore, Lieutenant Colonel (LTC) Gersh, a Public Affairs Officer at Fort Bragg, N.C., testified that his office attempted to "correct the record." LTC Gersh also informed the principal of appellant's high school that the Army would be willing to send an actual noncommissioned officer assigned to the Special Forces to speak with the students. In view of this evidence of this record, a reasonable factfinder could find or infer beyond a reasonable doubt that the Army was discredited.

■ Finally, appellant summarily argues that his speech was protected by the First Amendment. We agree with the Court of Military Review's resolution of this issue. 37 MJ at 563–64. The First Amendment does

not protect false statements about military operations made by a soldier in uniform to a public audience of high school students during wartime. *See generally Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

The decision of the United States Army Court of Military Review on reconsideration is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.