UNITED STATES, Appellee,

v.

Chris D. LITTLEWOOD, Staff Sergeant,
U.S. Air Force, Appellant.

No. 99–0604.
Crim.App. No. 32763.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 2, 2000.

Decided Aug. 25, 2000.

SULLIVAN, J., delivered the opinion of the Court, in which EFFRON, J., and COX, S.J., joined. COX, S.J., filed a concurring opinion. GIERKE, J., filed an opinion concurring in part and dissenting in part, in which CRAWFORD, C.J., joined.

For Appellant: *Captain Michael J. Apol* (argued); *Colonel Jeanne M. Rueth* (on brief).

For Appellee: *Captain Suzanne Sumner* (argued); *Colonel Anthony P. Dattilo* and *Lieutenant Colonel Ronald A. Rodgers* (on brief).

Judge SULLIVAN delivered the opinion of the Court.

During April of 1997, appellant was tried by a general court-martial composed of a military judge sitting alone at Whiteman Air Force Base, Missouri. He pleaded guilty to one specification of committing indecent acts with a child under 16. He pleaded not guilty to one specification of communicating indecent language to that same child, one specification of taking indecent liberties with her, and one specification of committing indecent acts with another child. He was found guilty of all the above specifications, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. On April 12, 1997, he was sentenced to a dishonorable discharge, confinement for 16 years, total forfeitures, and reduction to the rank of E–1. On June 18, 1997, the convening authority approved the sentence as adjudged. On March 11, 1999, the Court of Criminal Appeals dismissed the finding of guilty of committing indecent acts with the second child but affirmed the findings to the remaining specifications relating to the first child. The lower court reassessed the sentence and reduced confinement to 12 years but otherwise affirmed a dishonorable discharge, total forfeitures, and reduction to E–1.

We granted review of appellant's case on September 17, 1999, on the following issue:

WHETHER THE MILITARY JUDGE ERRED IN ALLOWING APPELLANT'S COMMANDER, OVER DEFENSE OBJECTION, TO PERSONALLY CHARACTERIZE THE NATURE AND EFFECT OF MANY OF THE ACTS THAT APPELLANT ALLEGEDLY COMMITTED.

We hold that the military judge erred in permitting appellant's commander to testify as to his lay opinion that certain acts were "indecent," "prejudicial to good order and discipline," and "service discrediting." *See generally United States v. Benedict*, 27 MJ 253, 259 (CMA 1988) (opinion testimony must be helpful to the factfinder). Nevertheless, we hold this error was harmless. Article 59(a), UCMJ, 10 USC § 859(a); *see United States v. Davis*, 26 MJ 445, 449 (CMA 1988).

SL, appellant's 9–year–old stepdaughter from a previous marriage, told her mother that appellant had touched her in a "bad way." Her mother reported this incident to the Missouri Social Service Agency. The social worker notified the Air Force Office of Special Investigations (AFOSI) of the allegations. An AFOSI agent interviewed appellant's 12–year–old natural daughter, KL, who then lived with appellant on Whiteman Air Force Base, Missouri. In the first interview, KL denied that appellant had done anything inappropriate to her. However, in a subsequent interview in her home, KL related numerous occasions on which appellant had touched her vagina, asked her to perform fellatio on him, rubbed his penis between her legs until ejaculation, touched her breast, and showed her pornographic movies.

When interviewed by AFOSI agents, appellant at first denied remembering any such incidents. However, he ultimately admitted touching and rubbing KL's vagina, licking KL's vagina, kissing KL's breast, kissing KL on the mouth, putting his penis between KL's legs until he ejaculated, and watching adult movies with KL. He said he "didn't remember" doing anything to SL.

At trial, the Government called Lieutenant Colonel (LtCol) Robert Kopp, appellant's squadron commander, to testify in its case-in-chief. (R. 441). The direct examination unfolded as follows:

ATC: Colonel Kopp, do you have personal knowledge of the accused?

WIT: I know Sergeant Littlewood from a professional perspective.

Q: Are you the accused's commander?

A: Yes, I am.

Q: Do you know when the accused arrived at Whiteman Air Force Base?

A: Yes. September of 1996; about seven months ago.

Q: *As a commander at Whiteman Air Force Base, do you consider yourself to be qualified to render a judgement as to*

*whether certain alleged acts would be indecent?*

A: *I believe I am.*

Q: *And, certain alleged acts would be prejudicial to good order and discipline?*

A: *Yes.*

Q: *Or bring discredit upon the Air Force?*

A: *Yes.*

Q: Lieutenant Colonel Kopp, do you consider the phrase, "Suck my dick" to be offensive?

IMC: *Objection, Your Honor.*

MJ: *The basis for your objection.*

IMC: *It's asking for an opinion of this witness who is not qualified to render an opinion; it is also irrelevant.*

MJ: *Objection is overruled.*

ATC: Thank you, Your Honor. One more time; do you consider the phrase, "Suck my dick" to be offensive?

WIT: Yes, I do.

ATC: If this phrase were told to a 12–year–old girl by a military member, would such a phrase be indecent?

IMC: Objection, Your Honor, not only is it calling for his opinion and irrelevant, it is also speculation, and asking for a conclusion.

MJ: The objection is overruled.

ATC: You may—or do you—

WIT: Could you repeat the question, please?

Q: Yes, when the phrase, "Suck my dick" is said to a 12–year–old girl by a military member, is such a phrase indecent?

A: Yes, it is indecent.

Q: Does it bring discredit upon the Air Force?

A: Yes, it does.

Q: Prejudicial to good order and discipline?

A: Yes, it does.

Q: If a military member, presumably, an adult, were to digitally penetrate a 12–year–old girl's vagina, would such an act be indecent?

A: Yes, it would be.

Q: Would it be prejudicial to good order and discipline?

A: Yes, it would.

Q: Would it bring discredit upon the Air Force?

A: Yes, it would.

Q: Has there ever been a time in this Air Force, to your knowledge, that such an act would not bring discredit upon the Air Force?

A: I'm unaware of such an act that would be acceptable.

Q: If an adult were to perform oral sex on a 12–year–old girl or have a 12–year–old girl perform oral sex on him, would these acts be indecent?

A: Yes, they would.

Q: Prejudicial to good order and discipline?

A: Yes, they would.

Q: Would they bring discredit upon the Air Force?

A: Yes, they would.

Q: What about an adult who ejaculates after rubbing his penis back and forth between a 12–year–old girl's legs; would that be indecent?

A: Yes, it would be indecent.

Q: And bring discredit upon the Air Force?

A: Yes, it would.

Q: Prejudicial to good order and discipline?

A: Yes, it would.

Q: How about an adult who shows pornographic movies to a 12–year–old girl; would that be indecent?

A: Yes, it would.

Q: Prejudicial to good order and discipline?

A: Yes, it would.

Q: An adult who fondles a 9–year–old girl, would that be indecent?

A: Yes, it would.

Q: I should say in a military member.

A: Yes, it would.

Q: Prejudicial to good order and discipline?

A: Yes.

Q: Bring discredit upon the Air Force.

A: Yes.

Q: Would you say that any type of sexual activity perpetrated on a 9–year–old girl, would that be indecent, by a military member?

A: Yes, it would.

Q: Prejudicial to good order and discipline?

A: Yes.

Q: Bring discredit upon the Air Force?

A: Yes, it would.

Q: Any sexual activity towards a 12–year–old girl, would the same hold true for indecency and conduct prejudicial to good order and discipline and bring discredit upon the Air Force?

A: Yes, it would.

Q: Has any type of sexual activity directed at a 9–year–old girl or a 12–year–old girl ever, to your knowledge, brought credit upon the Air Force?

A: No.

Q: Has it ever been anything but indecent?

A: Yes, to my knowledge.

ATC: I have no further questions.

(R. 442–46).

———  ———  ———

The granted issue asks whether the military judge erred in allowing appellant's commander to testify over defense objection as to the nature of certain conduct allegedly committed by appellant. LtCol Kopp generally testified that any sexual activity by a military member toward a 12–year–old girl was "indecent" and "prejudicial to good order and discipline," and would "bring discredit upon the Air Force." At trial, appellant objected that such testimony was unqualified opinion testimony, irrelevant, and called for speculation and conclusion on the part of the witness. (R. 443). On appeal, he argues that this opinion testimony was inadmissible because it was not based on personal knowledge, contained legal conclusions, and improperly used hypotheticals.

As noted above, appellant was charged with numerous offenses in violation of Article 134, UCMJ, e.g., indecent language, indecent liberties, and indecent acts with a child. Each offense required a showing of indecen-

cy and an additional legal element that the indecent conduct be "to the prejudice of good order and discipline in the armed forces" or "of a nature to bring discredit upon the armed forces." See paras. 87 and 89, Part IV, Manual for Courts–Martial, United States (1995 ed.). Judgement on these questions is committed to the factfinder at the court-martial, whether it be a military judge or members. See Article 51(c), UCMJ, 10 USC § 851(c); see generally Parker v. Levy, 417 U.S. 733, 748–49, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); United States v. Martinez, 42 MJ 327, 331 (1995).

The testimony of LtCol Kopp was offered to prove the above noted elements of these offenses. The Government concedes that "LtCol Kopp was never offered as an expert witness" in this case (Government Answer to Final Brief at 8), but asserts that he was "giving lay opinion testimony as member of the relevant community." Id. Furthermore, it argues that LtCol Kopp was particularly qualified to give helpful testimony on the above noted elements of the charged offenses because of his "rank and experience" as commander of appellant's military community.

Opinion testimony is admissible at court-martial. See Mil.R.Evid. 701 and 702, Manual, supra. It may be given by witnesses who are not testifying as experts. Id. Such testimony is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact. See Mil.R.Evid. 704. Nevertheless, there are requirements for the admission of lay opinion testimony at courts-martial. Mil.R.Evid. 701 states:

**Rule 701. Opinion testimony by lay witnesses**

If the witness is not testifying as an expert, the testimony of the witness in the form of opinions or inference is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) *helpful to a clear understanding of the testimony of the witness of the determination of a fact in issue.*

(Emphasis added.)

■ The pertinent question in appellant's case is whether the challenged testimony of

LtCol Kopp was "helpful" within the meaning of Mil.R.Evid. 701. This rule, like Fed. R.Evid. 701, is not new and has been applied in numerous situations. It is generally held, however, that opinion testimony is not helpful where it does no more than instruct the factfinder as to what result it should reach. *See United States v. Benedict,* 27 MJ at 259 (although opinion testimony allowed on ultimate issue of fact, it is not allowed on the issue of guilt or innocence or to state legal conclusions); *United States v. Rea,* 958 F.2d 1206, 1215 (2nd Cir.1992); *see generally* 1 *McCormick on Evidence* § 12 at 51 (5th ed.1999) (opinion testimony in terms of legal criterion not properly defined by questioner is not usually permitted).

Of course, we recognize the unique capacity and helpful ability of a military commander to observe and assess the specific impact of a member's crimes or conduct on the military community under his command.[*] *See United States v. Stone,* 40 MJ 420, 423–24 (CMA 1994) (holding admissible testimony of Master Sergeant as to effect of accused's conduct on his battalion); *United States v. Guaglione,* 27 MJ 268, 272 (CMA 1988) (holding that commander's testimony characterizing officer's conduct as no more than "poor judgement" in conduct unbecoming case cannot be ignored). However, the commander's opinions as to the propriety of such conduct in the military in general may not be matters outside the ken of the average military judge or member. *Cf. United States v. Meeks,* 35 MJ 64, 68–69 (CMA 1992) (holding homicide and its crime scene are not matters within knowledge of court member). Admittedly, the military judge has discretion in determining what evidence will or will not be helpful to him or the members in a particular case. Nevertheless, we conclude that the admission of the testimony of LtCol Kopp in this case constituted an abuse of that discretion. *See Woods v. Lecureux,* 110 F.3d 1215, 1219–21 (6th Cir.1997) (holding expert testimony on ultimate issue phrased in undelineated legal terms was properly excluded).

[*] The concurring in part and dissenting in part opinion in this case misreads our opinion on this

In this regard, we note that LtCol Kopp's testimony consisted of bald assertions, unsupported by reasoning or particular facts showing the manner in which these charged offenses embarrassed the command or undermined its morale. *See United States v. Benedict, supra* at 259 (ultimate issue rule does not allow opinions on guilt or innocence of accused); *see also United States v. Francis,* 25 MJ 614 (CGCMR 1987). Moreover, this opinion testimony was phrased in legal terms without explanation as to the lay witness' understanding of these terms. *See Woods v. Lecureux, supra; see also United States v. Marshall,* 2 USCMA 54, 58, 6 CMR 54, 58 (1952) (prosecution witness frequent use of word "rape" concerning acts of accused was improper as amounting to improper conclusion of law); *see also United States v. Guerrero,* 33 MJ 295, 298 (CMA 1991) ("factfinder must be certain that the prejudice or the discrediting nature of the conduct is legitimately focused toward good order and discipline or discrediting to the armed forces, and is not solely the result of the personal fears, phobias, biases, or prejudices of the witness"). Finally, the conclusory form of his testimony, unexplained and unequivocal, could foster the appearance of unlawful command influence in the eyes of the public. *See United States v. Balagna,* 33 MJ 54, 57 n. 1 (CMA 1991); *United States v. Grant,* 10 USCMA 585, 590, 28 CMR 151, 156 (1959). For these reasons, we conclude that it was an abuse of discretion for the military judge to admit this lay opinion testimony under Mil.R.Evid. 701. *See generally* 4 *Weinstein's Federal Evidence* § 704.04[1] (2d ed.2000) (legal conclusions in terms of statute generally inadmissible).

■ Such error, however, was clearly harmless. Article 59(a), UCMJ. Even a cursory review of the guilty specifications in this case involving a 12–year–old girl and her natural father reveals indecent conduct *per se. See United States v. Sanchez,* 11 USCMA 216, 218, 29 CMR 32, 34 (1960) (holding certain acts indecent *per se* where they are

question.

shown to be detestable and degenerate acts which clearly evince a wanton disregard for the moral standards generally and properly accepted by society). Moreover, we consider such despicable conduct to "virtually always ... be prejudicial to good order and discipline and discrediting to the Armed Forces." *United States v. Davis*, 26 MJ at 449; *see also Neder v. United States*, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (failure to instruct on element of offense could be harmless error where Government's overwhelming proof of this element was uncontested). Finally, we note that this was a trial by military judge alone, and we presume the trial judge was well aware of his codal responsibility to make his own independent judgement on each of the elements of these offenses. *See United States v. Raya*, 45 MJ 251, 253 (1996).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

COX, Senior Judge (concurring):

I agree with my learned colleague, Judge Gierke, that an officer or, indeed, an enlisted member of the armed forces may be qualified to express an opinion regarding the impact of misconduct on the good order and discipline of a unit. The witness may also be qualified to express an opinion regarding the service-discrediting nature of the misconduct. Likewise, the witness may be qualified to express an opinion regarding the rehabilitative potential of an accused.

Nevertheless, it becomes perilous for the Government to interject the "chain of command" into the process. When the accused's commanding offer is called upon to express an opinion on one of these nebulous, but essential, elements required to establish guilt under the general articles, Articles 133 and 134, UCMJ, 10 USC §§ 933 and 934, it has the potential to cross the razor-thin line between expertise and command influence. This danger of command influence leads me to conclude that the accused's commanding officer should not be the "expert" witness called upon to express an opinion on such subjective matters as "good order and discipline," "service discrediting," or "conduct unbecoming."

I recognize that there are many circumstances where the commanding officer may be the best witness to testify as to facts from which the members can infer the existence of the essential elements. For example, if an accused officer fraternizes with a junior member of his command, the commanding officer can relate to the members the facts from which the members can conclude that the conduct was disruptive in the unit. My concern is that the commanding officer should not be allowed to express his opinion that, based on the facts, the conduct alleged was prejudicial to "good order and discipline," "service discrediting," or "conduct unbecoming." The members are equally capable of considering the evidence presented and deciding those elements. Since, in this context, the commanding officer's opinion is not useful to the members, it should not be admissible. *See United States v. Birdsall*, 47 MJ 404 (1998), citing *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir.1993). Accordingly, I respectfully disagree with Judge Gierke's broad approach to this type of opinion testimony.

GIERKE, Judge, with whom CRAWFORD, Chief Judge, joins (concurring in part and dissenting in part):

I agree with the majority that it was error to permit LtCol Kopp to opine on whether the language was "indecent." I agree with the majority's holding that it was error to permit LtCol Kopp to testify that appellant's conduct was service discrediting, but I do not join in the majority's rationale. In my view, LtCol Kopp may well have been qualified to opine on whether the conduct was service discrediting, but the Government failed to lay a foundation for his testimony by showing that his duties as squadron commander included interaction with the civilian community that would enable him to gauge public reaction to appellant's conduct.

I disagree with several statements in the majority opinion. First, I disagree with the majority's holding that it was error to permit LtCol Kopp to opine that appellant's conduct

was prejudicial to good order and discipline. By virtue of his position as appellant's commander, he was clearly competent to gauge the impact of appellant's conduct on the unit, to know whether appellant's effectiveness as a noncommissioned officer (NCO) was compromised, and to know the extent to which other NCOs and airmen were affected. The impact on LtCol Kopp's command was relevant to the question whether appellant's misconduct was prejudicial to good order and discipline in the larger military community, beyond appellant's unit. *See United States v. Hullett*, 40 MJ 189, 193 (CMA 1994). This Court has considered the testimony of unit members in other cases involving prejudice to good order and discipline. *See, e.g., United States v. Stone*, 40 MJ 420 (CMA 1994). It has considered the testimony of the chain of command on the question whether an officer's conduct was "unbecoming." *See, e.g., United States v. Guaglione*, 27 MJ 268 (CMA 1988).

Second, I do not share the majority's doubts whether the subject matter of LtCol Kopp's opinion was "outside the ken of the average military judge or member." 53 MJ at 353. The average military judge or member would not be a member of appellant's unit and, thus, not as familiar with the impact of appellant's conduct on the unit.

Third, I disagree with the majority's suggestion that LtCol Kopp's testimony was objectionable because he did not fully articulate the reasons for his opinion. If the defense desired to test the basis for LtCol Kopp's opinions, they had ample opportunity to cross-examine him about it.

Finally, I disagree with the suggestion that LtCol Kopp's testimony "could foster the appearance of unlawful command influence in the eyes of the public." 53 MJ at 353. This case was tried before a military judge who was senior to LtCol Kopp and not in LtCol Kopp's chain of command. No reasonable observer would see unlawful command influence in this case.

I agree with the majority that an error arising from LtCol Kopp's testimony was harmless. Accordingly, I concur in the result.