# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant ANDREW J. BRASSELL**
**United States Army, Appellant**

ARMY 20160746

Headquarters, U.S. Army Combined Arms Support Command
Andrew J. Glass, Military Judge
Colonel James D. Levine II, Staff Judge Advocate

For Appellant:  Colonel Mary J. Bradley, JA; Major Julie L. Borchers, JA.

For Appellee:  Lieutenant Colonel Eric K. Stafford, JA.

31 January 2018

---------------------------------
SUMMARY DISPOSITION
---------------------------------

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of seven specifications of assault consummated by a battery and three specifications of disobeying a lawful order, in violation of Articles 90 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 928 (2012).  The military judge sentenced appellant to a bad-conduct discharge, confinement for three years, and reduction to the grade of E-1.  The military judge also granted appellant five days of confinement credit.  Pursuant to a pretrial agreement, the convening authority approved a bad-conduct discharge, twenty-four months of confinement, and reduction to the grade of E-1.

Appellant's case is before this court for review under Article 66, UCMJ.  In an unsworn submission pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant personally asserts that: 1) the military judge violated Rule for Courts-Martial [hereinafter R.C.M.] 1001(c) and R.C.M. 1001(g) when he limited the defense counsel's sentencing argument and failed to consider defense mitigation matters; and 2) the government's failure to disclose the victim's impact affidavit had a prejudicial effect on the sentence.  We disagree.

## BACKGROUND

All of the assault specifications in this case involve appellant assaulting his wife, LB. Originally, the government charged appellant with two specifications of raping LB by force in addition to other assault charges. Pursuant to a pretrial agreement, appellant pleaded guilty to the lesser-included offense of assault consummated by a battery. Appellant also pleaded guilty to violating several no-contact orders that his company commander issued.

At trial, appellant admitted to assaulting LB on many occasions over the course of their marriage. Part of appellant's explanation of why he assaulted LB was that he was attempting to stop her from leaving to buy drugs. The military judge explained the defenses of duress and defense of others to appellant. Both appellant and his counsel agreed that these defenses did not apply. The military judge also asked whether appellant's medical condition impacted his ability to participate in his defense and whether his traumatic brain injury, bi-polar disorder, or post-traumatic stress disorder raised any defenses. Appellant and defense counsel agreed that appellant was physically and mentally able to stand trial and his mental and physical condition did not amount to defenses to the charges.

The government did not introduce any evidence on sentencing. LB did not testify at the trial. The defense called appellant's doctor, parents, former supervisor, appellant's childhood priest, and appellant. The witnesses testified about appellant's medical condition, childhood, deployments, personal and professional accomplishments, and rehabilitative potential. Appellant apologized to LB, his family, and unit. In addition, the defense submitted six exhibits for the military judge to consider in extenuation and mitigation.

During presentencing argument, trial counsel asked the military judge to sentence appellant to a dishonorable discharge and four years of confinement. The written transcript of the argument is nine pages. In contrast, defense counsel asked the military judge to allow appellant "to soldier on," meaning some period of confinement but no punitive discharge. During defense counsel's argument, the military judge cautioned defense counsel that he had five more minutes of argument. The written transcript of the defense counsel argument is thirteen pages, with the military judge's warning coming after the first nine pages. After thirty-six minutes of deliberation, the military judge sentenced appellant to a bad-conduct discharge and three years confinement.

After trial but before submission of post-trial matters under R.C.M. 1105 and 1106, defense counsel received a copy of an affidavit from the victim.[1] The

---

[1] Although appellant characterizes the affidavit as a "victim impact affidavit," this is a mischaracterization of the document. The document records the victim's opinion whether the convening authority should accept appellant's offer to plead guilty.

affidavit was dated 28 October 2016—twenty days before arraignment and trial—and was part of the government's submission to the convening authority as papers accompanying appellant's offer to plead guilty. In his post-trial matters, appellant argued his "sentencing case was harmed" because the government failed to disclose an affidavit from the victim that showed her "support[ for] appellant's request that he not receive a punitive discharge." The staff judge advocate disagreed.

## DISCUSSION

### A. *Limited Sentencing Argument and Deliberation*

After a thorough review of the record, we find no violation of R.C.M. 1001(c) or R.C.M. 1001(g) by the military judge. Neither the interruption of the defense counsel's argument nor the fact that the military judge only spent thirty-six minutes deliberating on the sentence gives rise to a conclusion that the military judge had a predisposition to a specific sentence or did not give due consideration to the extenuation and mitigation evidence provided. The defense counsel's argument covered nine transcribed pages before the military judge gave the defense counsel five more minutes. The defense counsel continued with his argument for three more pages and was not interrupted again. In his argument, defense counsel covered appellant's deployments, family life, medical issues, LB's drug addiction, LB's spending habits, appellants' rehabilitative potential, and why appellant should not be discharged from the Army. Although the extenuation and mitigation exhibits amounted to almost 100 pages, most of the material was not new information. The majority of the information in the documents had been discussed throughout the trial (e.g., appellant's medical records and military awards).

### B. *Government's Failure to Disclose Evidence under R.C.M. 701*

The second issue raised by appellant regarding the government's failure to disclose the victim's affidavit is more troubling. The government was in possession of a sworn affidavit from the victim. The affidavit went to the convening authority at the same time charges were referred, yet the government did not disclose the affidavit until after trial. It is not clear from the sworn affidavits of the staff judge advocate, chief of justice, special victim prosecutor, or trial counsel why the document was not provided to the defense in a timely fashion. The Rules for Courts-Martial not only require the government to turn over "[a]ny paper which accompanied the charges when they were referred to the court-martial," but also to turn over "[a]ny sworn or signed statement relating to an offense charged . . . ."[2]

---

[2] That is not to say that every item presented to a convening authority within the same meeting would automatically be deemed to be "accompanying" the charges.

(continued . . .)

R.C.M. 701(a)(1)(A), (C). Accordingly, the government's failure to disclose the victim's affidavit until after trial was an error.

Having determined the government committed a disclosure violation under R.C.M. 701, we must nevertheless determine if the error materially prejudiced appellant's substantial rights.[3] *United States v. Stone*, 40 M.J. 420, 422 (C.M.A. 1994); *see also United States v. Romano*, 43 M.J. 523, 527 (A.F. Ct. Crim. App. 1995) (defining a disclosure violation as harmless unless it materially prejudices the substantial rights of the accused); UCMJ art. 59(a).

Reviewing the victim affidavit,[4] we conclude appellant's substantial rights were not materially prejudiced because the information in the affidavit that appellant argues he would have introduced was inadmissible.[5] Specifically, appellant argues the victim's support for his request to not receive a punitive discharge could have

---

(. . . continued)
Given the facts in this case, we treat the presentation of the offer to plead guilty as having accompanied the referred charges for all practical purposes because their discussion was so close in time and proximity to one another that they are fairly characterized as one discussion.

[3] The standard for a regulatory violation under R.C.M. 701 is different from the constitutional violation articulated in *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, a due process violation occurs whenever the undisclosed evidence is material to the defense. Generally-requested evidence is deemed material to the defense when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Stone*, 40 M.J. at 423. In contrast, specifically-requested evidence "will be considered 'material unless failure to disclose' can be demonstrated to 'be harmless beyond a reasonable doubt.'" *Id.* (quoting *United States v. Hart*, 29 M.J. 407, 410 (C.M.A. 1990)).

[4] Within the one-page affidavit, the victim expressed the following desires: 1) she did not want to testify at a contested trial; 2) she did not want appellant to have to register as a sex offender; 3) she believed appellant "deserves to be punished for what he has done" to her; 4) she wanted the government to provide appellant with the "continuing medical and behavioral health care he so desperately needs[;]" and 5) she "still supports [appellant] pleading to the lesser included offense of assault consummated by battery . . . as well as having [the convening authority] disapprove a punitive discharge less favorable than a Bad Conduct Discharge."

[5] This is not to say that all of the information in the affidavit would have been inadmissible. The defense would have been able to introduce a redacted version of the affidavit under R.C.M. 1001(c)(3). The information that would have been admissible is cumulative with the evidence the defense introduced through other witnesses, documents, and appellant's testimony.

had a significant impact on the military judge. This assertion ignores the fact that this is not permissible testimony.[6] It is well established that a witness may not comment on the appropriateness of a discharge. *United States v. Eslinger*, 70 M.J. 193, 198 (C.A.A.F. 2011); R.C.M. 1001(b)(5)(D). This restriction applies to both the government and defense. As our superior court has explained: "a witness—be he for the prosecution or the defense—should not be allowed to express an opinion whether an accused should be punitively discharged. The question of appropriateness of punishment is one which must be decided by the court-martial; it cannot be usurped by a witness." *United States v. Ohrt*, 28 M.J. 301, 304-05 (C.M.A. 1989).

Although we are troubled by the government's failure to live up to its R.C.M. 701 obligations, we are convinced its negligence did not have an impact in this case.

## CONCLUSION

After consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[6] We do not address the issue whether a crime victim providing testimony under R.C.M. 1001A could make a statement regarding a punitive discharge.

5